[600 NYS2d 292]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ROBERT LANDES, Appellant.

Third Department, July 8, 1993

1

2

### APPEARANCES OF COUNSEL

*Robert M. Cohen,* Ballston Lake, for appellant.

*David A. Wait, District Attorney* of Saratoga County, Ballston Spa *(Jerry J. Scarano, Jr.,* of counsel), and *Robert Abrams, Attorney-General,* New York City *(David C. Farman* and *R. Verle Johnson, Jr.,* of counsel), for respondent. (One brief filed.)

### OPINION OF THE COURT

LEVINE, J.

Defendant was indicted in Saratoga County on six counts of grand larceny in the third degree and eight counts of criminal violation of provisions of General Business Law article 23-A (the Martin Act), consisting of six counts of fraud in the sale of securities in violation of General Business Law § 352-c (6), one count of fraud in the sale of securities in violation of General Business Law § 352-c (1), and one count of unregistered sale of securities in violation of General Business Law § 359-e (3). After a jury trial, defendant was convicted of the one count of unregistered sale of securities and the one count of fraud in the sale of securities in violation of General Business Law § 352-c (1), but was acquitted on the remaining 12 counts.

The charges against defendant arose out of his efforts to attract investors in a venture for the distribution and marketing in the United States of a health food product called Nutri-King, a soy bean and rice mixture manufactured in India. Defendant, the owner of a health food store and cafeteria, had entered into a contract with the manufacturer of the product giving defendant the sole distribution rights in the United States. Defendant proposed to set up a corporation to seek one or more distributors for marketing the product domestically. He then began to solicit investors whose cash payments would be exchanged for shares of the capital stock of the proposed corporation. Eventually, he collected some $100,000 from 12 investors. Six of those investors, whose contributions aggregated $75,000, testified at the trial. Each described oral representations made by defendant that they would receive shares

of stock in the new corporation, that their investment would be used solely to buy the Nutri-King product and that, pending purchase of the product, a special escrow account would be set up for the invested funds. Each investor signed a written agreement with defendant which, however, did not contain defendant's oral promises. The People introduced into evidence defendant's Grand Jury testimony given after waiving immunity. He testified that he made no oral promises to investors and felt free to use their funds for his own purposes during the period when he was earnestly (albeit unsuccessfully) seeking distributors for Nutri-King.

Defendant's first point on appeal is that his two convictions of Martin Act violations should be reversed and the charges dismissed because his transactions with the investors were not public offerings of securities, but rather personal sales of stock in a private corporation. Defendant points to the evidence that all of the sales were directly made to individuals he knew or who were introduced to him by someone he knew personally. Thus, defendant argues, there was no offering to the public at large. We disagree.

The Martin Act was designed to protect the public from fraudulent exploitation in the offering and sale of securities and the protection of investors from such practices *(see, CPC Intl. v McKesson Corp.,* 70 NY2d 268, 277). When there is no New York authority on point, we are advised to consider Federal court decisions construing the Federal Blue Sky Laws *(see, All Seasons Resorts v Abrams,* 68 NY2d 81, 87; *see also, State of New York v Rachmani Corp.,* 71 NY2d 718, 726).

In addressing the question of whether a particular securities transaction constituted a public offering for Federal securities law jurisdiction, the Federal courts have focused the inquiry on the offerees' need for the protection afforded by registration *(see, Securities & Exch. Commn. v Ralston Purina Co.,* 346 US 119, 127; *Van Dyke v Coburn Enters.,* 873 F2d 1094, 1098). Registration promotes full disclosure of information thought necessary to make an informed investment decision *(see, Securities & Exch. Commn. v Ralston Purina Co., supra,* at 124). Four factors have been identified to determine whether potential investors need the protection of a registration statement: (1) the number of *offerees* (not just the number of actual purchasers) and their relation to each other and to the issuer, (2) the number of units offered, (3) the size of the offering, and (4) the manner of the offering *(see, Doran v Petroleum Mgt. Corp.,* 545 F2d 893, 900; *see also, Hill York Corp. v American*

*Intl. Franchises,* 448 F2d 680, 691). The evidence here, in our view, supports the conclusion that this was a public offering. There were 12 actual subscribers to stock in defendant's proposed corporation. However, defendant had offered a third party money for obtaining potential investors and did compensate that individual for bringing in two investors. Thus, it is readily inferable that the number of offerees was substantially greater. Many of the actual purchasers had not previously known defendant or their fellow investors and, with perhaps one or two exceptions, the purchasers were not highly sophisticated investors and had to rely completely upon defendant regarding the financial prospects of the new enterprise in the health food industry they sought to enter. Defendant was the offerees' only possible source of the information a registration statement would have provided. There was testimony that, once having received funds from the investors, defendant evaded their inquiries on the status of the corporation's finances and prospects, and the location of the funds they contributed. A significant dollar amount and number of shares were involved. Thus, defendant's argument that the evidence established merely a private offering of stock exempt from the Martin Act fails *(see, Securities & Exch. Commn. v Continental Tobacco Co.,* 463 F2d 137, 158-161).

Likewise unpersuasive is defendant's argument that he was denied effective assistance of counsel because of a conflict of interest based upon defense counsel's involvement in defendant's negotiation with the Indian manufacturer of the product and his drafting of the written agreements with the investors. Defendant's assertion that his attorney's undertaking to represent him deprived him at the trial of the benefit of the attorney's exculpatory testimony is entirely speculative and unsupported in the record. Thus, defendant has failed to demonstrate any significant possibility of a conflict of interest between him and trial counsel which bore any substantial relationship to the conduct of the defense *(see, People v Lombardo,* 61 NY2d 97, 103). The record amply demonstrates the vigor and skill of defense counsel's representation, as further shown by defendant's acquittal on 12 of the 14 counts of the indictment, including the more serious charges.

We also reject defendant's contention that the evidence failed to establish fraud on his part. "Fraud" and "fraudulent practice" as used in General Business Law § 352-c have been given a broad meaning *(see, Matter of Badem Bldgs. v Abrams,* 70 NY2d 45, 54). A finding of fraudulent practice may be

based upon an omission if there is a substantial likelihood that disclosure of the omitted fact would have been significant in deliberations of a potential investor *(see, State of New York v Rachmani Corp.,* 71 NY2d 718, 726, *supra).* The jury could readily find fraud here based on the evidence of defendant's oral misrepresentations to the investors regarding placing their funds in a special account to be used solely to purchase the Nutri-King product, and the nondisclosure of his contrary intent to exercise complete discretion in the disposition of those funds.

■ We have reviewed defendant's remaining points for reversal of his conviction and find them also to be without merit. Nor do we agree with defendant that the concurrent sentences he received of 60 days' incarceration were excessive. Remittal, however, is necessary with respect to County Court's imposition of a one-year conditional discharge contingent upon defendant's making full restitution; a hearing must be held to determine defendant's financial condition, the appropriate amount of restitution and a payment schedule, if any *(see, People v Robinson,* 174 AD2d 779, 780; *see also,* Penal Law § 65.10 [2] [g]).

WEISS, P. J., CREW III, MAHONEY and CASEY, JJ., concur.

Ordered that the judgment is modified, on the law, by reversing so much thereof as imposed a one-year conditional discharge on defendant contingent on his making full restitution; matter remitted to the County Court of Saratoga County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.