[630 NYS2d 163]

MARION R. PODRAZA et al., Appellants-Respondents, v GERALD J. CARRIERO et al., Respondents-Appellants, and HOWARD NEUMANN, Also Known as JERRY NEUMANN, Respondent, et al., Defendants.

Fourth Department, July 14, 1995

332

## APPEARANCES OF COUNSEL

*Phillips, Lytle, Hitchcock, Blaine & Huber,* Buffalo *(Jeremiah McCarthy* of counsel), for appellants-respondents.

*Dixon, DeMarie & Schoenborn, P. C.,* Buffalo *(Joseph DeMarie* of counsel), for respondents-appellants.

*Nicholas Konst,* Buffalo, for respondent.

## OPINION OF THE COURT

BOEHM, J.

The principal issue raised on this appeal is when does a civil cause of action based upon an alleged violation of the Racketeer Influenced and Corrupt Organizations Act (RICO; 18 USC § 1961 *et seq.)* accrue in computing the period of the Statute of Limitations.

### I

Plaintiffs, 29 individuals who invested in a real estate development venture, commenced this action in 1992 asserting eight causes of action grounded in fraud, breach of contract, violation of the trust provisions of General Business Law § 352-h, and violation of RICO. Plaintiffs' RICO cause of action alleges the "fraud [of defendants] in the sale of securities, and their use of the mail and telephone wires to perpetrate a fraud and swindle [which was a] part of a pattern of racketeering activities to execute [their continuing] scheme to take money from" plaintiffs.

In their verified complaint, plaintiffs allege that, in the early 1970's, Gerald J. Carriero, Esther Weisman Carriero and Howard Neumann (defendants) became involved in the development of real estate properties in the City of Buffalo. Plaintiffs allege that in 1975 defendants concocted a scheme to solicit individuals, whom they knew from the insurance and securities brokerage business, for the purpose of persuading those individuals to cash in their insurance policies and other investments and to reinvest the proceeds in documents characterized as certificates of indenture in Fordham Management Corp. (FMC certificates). Defendants represented that the FMC certificates were to be used to purchase and operate the properties. Plaintiffs allege that some of the money was used for other purposes, such as the purchase of properties in the names of Carriero and Weisman Carriero. Plaintiffs invested in FMC certificates in the period from 1975 to 1979.

Plaintiffs also allege that in October 1981 defendants Carriero, Weisman Carriero, Neumann, Wall, Santone, Simmons and FMC "formulated a new scheme to defraud the plaintiffs through the repurchase of the Fordham certificates by [Carriero] and Fordham." In January 1980 FMC ceased paying interest on the FMC certificates. Defendants informed plaintiffs of the default in a letter, dated December 13, 1979. According to plaintiffs, Neumann and Carriero held creditors' meetings in December 1980 and November 1981 at which they represented that FMC had no assets and that it was unable to meet its obligations. Neumann and Carriero offered to liquidate plaintiffs' FMC certificates for $.15 per $1 face value, but this required acceptance by 100% of the FMC certificate holders. Thereafter, the offer was reduced to $.10 per $1 face value.

Plaintiffs further allege that, from 1982 to 1983, defendants participated in a fraudulent scheme to siphon assets from FMC that would otherwise have been available to discharge the obligations due on the certificates and that plaintiffs did not become aware of the fraud until October 1990, when plaintiffs' counsel informed them of the underlying facts.

Plaintiffs' eighth cause of action alleging a civil RICO violation against all defendants is based upon the "fraud [of defendants] in the sale of securities, and their use of the mail and telephone wires to perpetrate a fraud and swindle [which was] part of a pattern of racketeering activities to execute [their continuing] scheme to take money from" plaintiffs.

After issue was joined, Neumann moved to dismiss plaintiffs' complaint on the ground that all causes of action against him were time barred; that Supreme Court lacked subject matter jurisdiction over the RICO causes of action; that certain plaintiffs failed to comply with discovery demands; and that certain plaintiffs were improper parties because they no longer owned FMC certificates. Thereafter, Carriero, Weisman Carriero, Simmons and FMC moved for summary judgment dismissing plaintiffs' complaint against them on similar grounds. The court upheld those causes of action based upon breach of contract, fraud and violation of General Business Law § 352-h, but dismissed plaintiffs' cause of action predicated upon a violation of the RICO statute.

## II

Preliminarily, we note that defendants' contention that New York courts lack subject matter jurisdiction over RICO

claims is without merit. Federal and State courts have concurrent jurisdiction over claims brought under RICO *(see, Tafflin v Levitt,* 493 US 455, 458-460).

With respect to a civil cause of action, the RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee" (18 USC § 1964 [c]).

The elements that must be pleaded to state a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" *(Sedima, S.P.R.L. v Imrex Co.,* 473 US 479, 496; *see also, McCool v Strata Oil Co.,* 972 F2d 1452, 1464 [7th Cir] ["(t)he elements of a civil RICO claim * * * are 1) a violation of the RICO statute, including proof that the defendant has participated in a pattern of racketeering, and 2) an injury to business or property"]).

A pattern of racketeering activity "consists of 'at least two acts of racketeering activity, one of which occurred after [October 15, 1970] and the last of which occurred within ten years * * * after the commission of a prior act of racketeering activity.' 18 U.S.C. § 1961 (5)" *(Agristor Fin. Corp. v Van Sickle,* 967 F2d 233, 241 [6th Cir]). The definition of racketeering activity includes "any one of a number of predicate offenses, including wire and mail fraud. 18 U.S.C. § 1961 (1)" *(McCool v Strata Oil Co., supra,* at 1464). Racketeering also includes fraud in the sale of securities (18 USC § 1961 [1] [D]).

The accrual of a cause of action based on a Federal statute is governed by Federal law *(see, Bath v Bushkin, Gaims, Gaines & Jonas,* 913 F2d 817, 820 [10th Cir]). Congress did not provide an express Statute of Limitations for civil RICO actions, but in 1987 the Supreme Court, borrowing from the Clayton Act, held that the Statute of Limitations for civil RICO claims is four years *(Agency Holding Corp. v Malley-Duff & Assocs.,* 483 US 143, 152-156). Unfortunately, the Supreme Court expressly left undecided when a civil RICO action accrues *(Agency Holding Corp. v Malley-Duff & Assocs., supra,* at 156-157). The Federal Courts of Appeal have wrestled with the accrual issue and have reached varied and conflicting results. Our research discloses no New York case dealing with this question. In the absence of controlling Federal guidance,

it becomes necessary to arrive at our own determination. Doing so requires an analysis of the Federal cases.

In determining the accrual date of a RICO claim, the First, Second, Fourth, Seventh and Ninth Circuits look to the date "the plaintiff discovers her injury, even if she has not yet discovered the pattern of racketeering" *(McCool v Strata Oil Co., supra,* at 1465 [7th Cir]; *see, Bontkowski v First Natl. Bank,* 998 F2d 459 [7th Cir], *cert denied* — US —, 126 L Ed 2d 567; *Rodriguez v Banco Cent.,* 917 F2d 664 [1st Cir]; *Bankers Trust Co. v Rhoades,* 859 F2d 1096 [2d Cir], *cert denied* 490 US 1007; *Pocahontas Supreme Coal Co. v Bethlehem Steel Corp.,* 828 F2d 211 [4th Cir]; *Compton v Ide,* 732 F2d 1429 [9th Cir]).

Conversely, the Third, Eighth, Tenth and Eleventh Circuits hold that accrual of a RICO claim does not occur until plaintiff discovers both an injury to business or property and a pattern of racketeering activity, i.e., when all of the elements required to bring a civil RICO action exist *(see, Davis v Grusemeyer,* 996 F2d 617 [3d Cir]; *Keystone Ins. Co. v Houghton,* 863 F2d 1125 [3d Cir]; *Glessner v Kenny,* 952 F2d 702 [3d Cir]; *Granite Falls Bank v Henrikson,* 924 F2d 150 [8th Cir]; *Bath v Bushkin, Gaims, Gaines & Jonas,* 913 F2d 817, *supra* [10th Cir]; *Bivens Gardens Off. Bldg. v Barnett Bank,* 906 F2d 1546, 1550-1551 [11th Cir], *cert denied sub nom. Barnett Banks v Konstand,* 500 US 910, distinguishing *Bowling v Founders Tit. Co.,* 773 F2d 1175 [11th Cir], *cert denied sub nom. Zoldessy v Founders Tit. Co.,* 475 US 1109). The Sixth Circuit in *Agristor Fin. Corp. v Van Sickle* (967 F2d 233, *supra)* applied both the date of discovery of injury ("simple discovery rule") and the date of discovery of a pattern of racketeering activity in applying the Statute of Limitations.

The doctrinal underpinning for focusing on the date of discovery of the injury as the date of accrual has been articulated by the Seventh Circuit as follows: "[T]here is an important distinction between discovery of an *injury* and discovery of a *cause of action* * * * The [racketeering] pattern element of RICO gives rise to the cause of action, but is not the injury itself" *(McCool v Strata Oil Co., supra,* at 1465).

The Tenth Circuit, in rejecting the "simple discovery" rule, gave what would appear to be a more persuasive basis for the contrary position. "[W]e think that the more complete rule is 'that with respect to each independent injury to the plaintiff, a civil RICO cause of action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both

the existence and source of his injury and *that the injury is part of a pattern.' Bivens Gardens,* 906 F.2d at 1554-55. This rule recognizes that a civil RICO plaintiff must allege not only injury, but also that the injury is part of a pattern of racketeering activity, to state a claim. *Id." (Bath v Bushkin, Gaims, Gaines & Jonas, supra,* at 820-821 [emphasis added].)

The latter line of cases rests upon the sound reasoning that "[c]onceptually there is no requisite RICO 'injury' until the damage * * * becomes part of a pattern of racketeering activity" *(Keystone Ins. Co. v Houghton, supra,* at 1131). The Eighth Circuit has rationalized the principle more fully:

"The ['date of discovery'] accrual rule therefore is difficult to square with the statute, for an injury caused by a single predicate act of racketeering is not transformed into the requisite RICO injury until a pattern of racketeering is established. Section 1964 (c) requires a plaintiff to be 'injured in his business or property by reason of *a violation of section 1962.'* (Emphasis added.) A violation of section 1962 results not merely from a single act of racketeering activity but from a pattern of racketeering activity, which by definition requires at least two predicate acts occurring within a ten year period. In selecting a term of ten years within which predicate acts could occur to establish the pattern requirement, Congress must have contemplated recovery for remote acts and even for remote injuries.

" '[Thus, the] heart of any RICO complaint is the allegation of a *pattern* of racketeering.' *Malley-Duff,* 483 U.S. at 154, 107 S.Ct at 2766" *(Granite Falls Bank v Henrikson, supra,* at 154).

The Federal circuits also diverge on another issue, i.e., whether each predicate act gives rise to a new cause of action or whether accrual occurs only when the last predicate act is performed. The Third Circuit applies a "last predicate act" rule, holding that the civil RICO Statute of Limitations "runs from the date the plaintiff knew or should have known that the elements of the civil RICO cause of action existed unless, as a part of the same pattern of racketeering activity, there is further injury to the plaintiff or further predicate acts occur, in which case the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity" *(Keystone Ins. Co. v Houghton, supra,* at 1130).

Differing with the Third Circuit are the First *(Rodriguez v*

*Banco Cent., supra,* at 667), Second *(Bankers Trust Co. v Rhoades, supra,* at 1104), Seventh *(McCool v Strata Oil Co., supra,* at 1465), Eighth *(Granite Falls Bank v Henrikson, supra,* at 154), Tenth *(Bath v Bushkin, Gaims, Gaines & Jonas, supra,* at 820) and Eleventh *(Bivens Gardens Off. Bldg. v Barnett Bank, supra,* at 1554) Circuits, which apply a "separate accrual" rule to civil RICO actions: "As in a civil antitrust case, a new cause of action under RICO arises on the occurrence of each separate injury, and a suit to recover for that injury must be brought within the limitations period [citations omitted]" *(McCool v Strata Oil Co., supra,* at 1465). The courts rejecting the Third Circuit's "last predicate act" rule have done so principally upon the reasoning that the rule impermissibly extends the Statute of Limitations *(see, e.g., Rodriguez v Banco Cent., supra,* at 667).

### III

Defendants contend that the "simple discovery" rule in *Bankers Trust Co. v Rhoades (supra)* controls because New York courts are compelled to follow the Second Circuit, wherein the State of New York is located. That contention is, of course, without merit. Where "there is neither a decision of the Supreme Court nor uniformity in the decisions of the lower Federal courts, a State court required to interpret a Federal statute is not bound to follow the decision of the Federal courts or precluded from exercising its own judgment [citation omitted]" *(423 S. Salina St. v City of Syracuse,* 68 NY2d 474, 489, *cert denied* 481 US 1008).

In our view, the accrual rule arrived at in *Granite Falls Bank v Henrikson (supra,* at 152-154) and by the other circuits in agreement represents the better approach, and is the one that is most in accord with the policy of New York that the Statute of Limitations does not begin to run until there is a right to relief *(see, LaBello v Albany Med. Ctr. Hosp.,* 85 NY2d 701; *Kronos, Inc. v AVX Corp.,* 81 NY2d 90, 94). "Stated another way, accrual occurs when the claim becomes enforceable, i.e., when all elements of the [claim] can be truthfully alleged in a complaint [citations omitted]" *(Snyder v Town Insulation,* 81 NY2d 429, 432).

The rule that a civil RICO claim does not accrue until a plaintiff both knows, or should have known, of the injury to business or property, *and* that the predicate act causing injury is part of a pattern of racketeering activity is based on a

sounder footing than the "simple discovery rule." The compelling argument is that "[c]onceptually there is no requisite RICO 'injury' until the damage impacting the plaintiff becomes part of a pattern of racketeering activity. Prior to that point there is no *RICO* injury and the statute of limitations may not begin to accrue" *(Keystone Ins. Co. v Houghton, supra,* at 1131). Further, "common sense indicates that there is no accrual until all facts exist so that the plaintiff can allege a complete cause of action" *(Butler v Local Union 823,* 514 F2d 442, 450 [8th Cir], *cert denied* 423 US 924). In *Agency Holding Corp. v Malley-Duff & Assocs.* (483 US, *supra,* at 154), the Supreme Court emphasized that "the heart of any RICO complaint is the allegation of a *pattern* of racketeering". Moreover, "[t]he application of the discovery rule to both the injury and pattern elements of the civil RICO claim properly advances the broad remedial nature of civil RICO. Because a civil RICO plaintiff must prove that his injury is part of a pattern of racketeering activity, an injured party must know, or have reason to know, that his injury is part of a pattern before he can be expected to file a civil RICO cause of action. This rule also furthers the purposes of the four year statute of limitations for civil RICO claims established by the Supreme Court by requiring plaintiffs to pursue the civil RICO remedy within four years of the time when they discovered, or reasonably should have discovered, that they are entitled to civil RICO damages for their injury" *(Bivens Gardens Off. Bldg. v Barnett Bank,* 906 F2d, *supra,* at 1555; *see, Sedima, S.P.R.L. v Imrex Co.,* 473 US, *supra,* at 498 [RICO is to " 'be liberally construed to effectuate its remedial purposes' "]).

Here, plaintiffs' discovery of the injury (FMC's default on plaintiffs' certificates) occurred more than four years from the filing of plaintiffs' complaint in 1992. Plaintiffs allege, however, that they were unaware until October 1990 of the existence of FMC assets that were available to pay the obligations on the certificates and of the scheme to conceal those assets and transfer them illegally to defendants. Plaintiffs have raised, therefor, an issue of fact with respect to when they knew or reasonably should have known of the pattern of racketeering activity. The fact that such activity would constitute a pattern of racketeering is not contested by defendants. Plaintiffs' civil RICO cause of action should be reinstated.

We have examined defendants' other contentions regarding plaintiffs' RICO cause of action and conclude that they are without merit.

## IV

■ Defendants also contend that plaintiffs' causes of action predicated upon breach of contract, fraud and violations of the trust fund provisions of General Business Law § 352-h are barred by the applicable Statutes of Limitations. We disagree.

Plaintiffs' breach of contract causes of action accrued when some of the plaintiffs' certificates matured, i.e., between 1987 and 1990. The applicable Statute of Limitations is six years (see, CPLR 213 [2]), and plaintiffs' complaint was filed and served in August 1992.

Dismissal of plaintiffs' fraud causes of action was properly denied because there is as yet insufficient evidence to determine whether the fraud causes of action were commenced within six years of the alleged conduct constituting fraud (see, CPLR 213 [8]; *Pommer v Trustco Bank,* 183 AD2d 976, *lv dismissed in part and denied in part* 81 NY2d 758), or within two years of the discovery of such fraud (see, CPLR 203 [g]; *Emord v Emord,* 193 AD2d 775; *K&E Trading & Shipping v Radmar Trading Corp.,* 174 AD2d 346).

Because actions brought under the Martin Act are governed by the six-year Statute of Limitations for fraud (see, *Guardian Life Ins. Co. v Handel,* 190 AD2d 57; *State of New York v Bronxville Glen I Assocs.,* 181 AD2d 516), the court properly declined to dismiss plaintiffs' cause of action predicated upon a violation of General Business Law § 352-h.

■ The court also properly declined to dismiss the complaint of those plaintiffs who, defendants contend, failed to respond to their motions for summary judgment. The verified complaint together with the affidavits and discovery responses of plaintiffs collectively constitutes evidence sufficient to defeat defendants' motion for summary judgment (see, CPLR 105 [u] [" 'verified pleading(s)' may be utilized as an affidavit whenever the latter is required"]; *County of Nassau v Cedric Constr. Corp.,* 100 AD2d 890, 892).

Finally, we reject defendants' contention that plaintiffs' complaint against defendants Simmons and Wall should have been dismissed because those defendants had no role in the purported fraudulent conduct. Such dismissal would be premature until the facts are developed with respect to the participation of those defendants in that conduct.

## V

Accordingly, the order appealed from should be modified by

reinstating plaintiffs' civil RICO cause of action and, as modified, affirmed.

GREEN, J. P., LAWTON, CALLAHAN and BALIO, JJ., concur.

Order unanimously modified, on the law, and as modified, affirmed, without costs, in accordance with the opinion by BOEHM, J.