*368 OPINION OF THE COURT
Leland DeGrasse, J.
In this action brought by the Attorney-General of the State of New York pursuant to the Martin Act (General Business Law art 23-A) the State moves for partial summary judgment. Defendants 7040 Colonial Road Associates Co. (7040 Associates) and David Whitmore (Whitmore) cross-move for summary judgment.
FACTS
This action arises from allegedly fraudulent and misleading conduct in the promotion and sale of real estate securities in the cooperative corporation known as 7040 Colonial Road Corporation, owner of the 59-unit residential property located at 7040 Colonial Road in Brooklyn (the premises). Defendant 7040 Associates is a limited partnership and sponsor of the plan to convert the premises to cooperative ownership. Defendants Whitmore, Swift and Regevik are all general partners of 7040 Associates.
On April 27, 1987, a noneviction offering plan was accepted for filing by the Attorney-General’s office. The offering plan was declared effective on January 25, 1988, when the number of apartments sold exceeded the requisite 15% of all apartments in the building. This fact was contained in the third amendment to the offering plan, which was accepted for filing by the Attorney-General on May 9, 1988. The sponsor transferred title to the apartment corporation on August 12, 1988. This fact was disclosed in the fifth amendment to the offering plan, which was accepted for filing on November 2, 1988.
The sixth and final amendment to the offering plan was accepted for filing on October 13, 1989. The letter from the Attorney-General accepting the sixth amendment extended the term of the offering plan for a period of 12 months from the date of filing. This letter recited, as did all letters of acceptance from the Attorney-General, that “any material change of fact or circumstance affecting the property or offering requires an immediate amendment.”
Defendants closed on 28 of the 59 apartments contained in the premises. Between August 26, 1988 and October 28, 1992 defendants sold shares to approximately 17 apartments. The sponsor transferred title to an additional 11 apartments to lower the sponsor’s burden to pay maintenance. According to Whitmore’s testimony given to the Attorney-General, the main *369 tenance on these 11 apartments exceeded the rental income received by the sponsor from the tenants. Whitmore claims that these apartments were “given away” with no consideration paid to the sponsor in order to avoid this “negative cash flow.”
From the date it purchased the property the cooperative corporation was buffeted by financial difficulties and internal dissension. The corporation had difficulty making mortgage payments perhaps as early as 1991. In 1994, the Dime Savings Bank of Williamsburgh began foreclosure proceedings which resulted in a 1996 judgment of foreclosure and sale. The apartment corporation filed a bankruptcy petition in the United States District Court, Eastern District of New York, which proceeding is apparently still pending.
DISCUSSION
A. The Scope of the Martin Act The Martin Act, New York State’s “blue sky law”, prohibits a broad array of fraudulent and misleading practices in the sale of securities — including real estate securities such as shares in a cooperative apartment corporation. The Martin Act has been construed liberally by the courts to effect its remedial purpose. “Fraud” under the Act “includes all deceitful practices contrary to the plain rules of common honesty and all acts tending to deceive or mislead the public, whether or not the product of scienter or intent to defraud.” (Kaufmann, Introduction and Commentary Overview, McKinney’s Cons Laws of NY, Book 19, General Business Law art 23-A, at 32-33.) Under the Act the Attorney-General is responsible both for protecting the investing public as a whole, and for redressing harm suffered by individual investors because of misleading or fraudulent practices in connection with the promotion or sale of securities. (See, People v Landes, 192 AD2d 1, 4, affd 84 NY2d 655.) Thus the Act provides for a broad range of remedies, from permanent injunctions to the payment of damages and/or restitution to individual investors. (General Business Law § 353.)
General Business Law § 352-c (1) prohibits:
“(a) Any fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale;
“(b) Any promise or representation as to the future which is beyond reasonable expectation or unwarranted by existing circumstances;
“(c) Any representation or statement which is false, where the person who made such representation or statement: (i) *370 knew the truth; or (ii) with reasonable effort could have known the truth; or (iii) made no reasonable effort to ascertain the truth; or (iv) did not have knowledge concerning the representation or statement made;
“where engaged in to induce or promote the issuance, distribution, exchange, sale, negotiation or purchase within * * * this state of any securities * * * regardless of whether issuance, distribution, exchange, sale, negotiation or purchase resulted.”
General Business Law § 352-e provides that no sale or promotion of real estate securities shall take place prior to the filing of an offering plan with the Attorney-General. This section also sets forth the required content of offering plans. Pursuant to General Business Law § 352-e (6) the Attorney-General has promulgated regulations applicable to all offering plans. These regulations, which appear at 13 NYCRR part 18, contain broad prohibitions against fraudulent or misleading statements that are similar to those in General Business Law § 352-c, quoted above. Section 18.5 (a) (1) of these regulations provides that if the offering plan does not comply with General Business Law § 352-e (1) (b) or with 13 NYCRR 18.1 (b) “due to change of circumstances, the passage of time or any other reason, the offering plan must be amended promptly.” Thus there is a continuing obligation on a person or entity offering real estate securities to insure that the offering plan is current and truthful.
The Martin Act provides the Attorney-General with what one commentator has characterized as “the broadest and most easily triggered investigative and prosecutorial powers of any securities regulator, state or federal.” (Kaufmann, Introduction and Commentary Overview, McKinney’s Cons Laws of NY, Book 19, General Business Law art 23-A, at 9.) Section 352 of the Act empowers the Attorney-General to commence an investigation even before the commission of a fraudulent act or practice. The Attorney-General may pursue his investigative goals either through confidential investigations conducted under compulsion of subpoena (General Business Law § 352) or through public investigations conducted pursuant to court order (General Business Law §§ 354, 355).
The State claims that defendants violated the Martin Act by engaging in a number of actions, including the following:
(1) Soon after transferring title to the apartment corporation, defendants began to default on maintenance payments due on their unsold shares, belying their representation in the *371 offering plan that they had sufficient resources to meet their maintenance payments. Defendants also failed to amend their offering plan to apprise potential investors of their failure to pay maintenance.
(2) Contrary to representations made in the offering plan, defendants failed to hold an election of directors within 30 days of transfer of title, and no election was held for more than a year after transfer. After purchasers were finally elected to the board, defendants allegedly failed to call board meetings.
(3) Defendants failed to abide by the representations in the offering plan and the fifth amendment to the offering plan that they would establish and fund a reserve fund pursuant to the New York City Reserve Fund Law.
(4) Defendants failed to disclose the death of Donald Klungland, one of the general partners of the sponsor.
These are “material facts” for Martin Act purposes. (See, State of New York v Rachmani Corp., 71 NY2d 718, 726-727; State of New York v Manhattan View Dev., 191 AD2d 259.)
On the basis of defendants’ misrepresentations and omissions the State seeks, inter alia, an order permanently enjoining defendants from engaging in the promotion or sale of real estate securities, directing that defendants pay back maintenance to the apartment corporation, and directing that a hearing be held to determine the amount of restitution and/or damages to be paid to purchasers of units in the cooperative.
In their cross motion for summary judgment defendants argue that these claims are barred by the applicable Statute of Limitations.
B. Statute of Limitations
Although the parties disagree on which Statute of Limitations applies to plaintiff’s claims, this disagreement is immaterial as the parties agree that the applicable limitations period is six years.[1] The complaint was filed on May 30, 1996. Accordingly, all claims that accrued before May 30, 1990 are time barred.
*372 The crucial issue thus becomes: when did plaintiff’s claims accrue? Surprisingly, given the age and ubiquity of the Martin Act, the issue of when Martin Act claims accrue has barely been touched upon by the courts of this State.
The general rule is that a cause of action accrues at the time a plaintiff is first able to commence a particular action. (LaBello v Albany Med. Ctr. Hosp., 85 NY2d 701, 704; 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 203.01.) The only “plaintiff” who may bring a Martin Act claim is the Attorney-General. There is no private right of action under the Martin Act. (CPC Intl. v McKesson Corp., 70 NY2d 268.)
The defendants seize on this general rule of accrual and argue that since the Attorney-General could have brought this action upon the “publication” of the offering plan or its amendments, all the State’s claims accrued, at the latest, on October 13, 1989, the date that the sixth and final amendment to the offering plan was accepted for filing. Since this accrual date was more than six years prior to the filing of this action, defendants argue that plaintiffs claims are time barred.
Strict application of the general rule of accrual to Martin Act claims would unduly restrict the broad reach and remedial purpose of the Martin Act and the extensive investigative and prosecutorial powers it reposes with the Attorney-General. As discussed above, the Martin Act is designed to provide the Attorney-General with the tools to prevent, as well as punish, the broadest possible array of fraudulent or misleading practices in connection with the sale or promotion of securities. The Act empowers him both to protect the investing public as a whole, and to seek redress for harm suffered by individual investors because of misleading or fraudulent practices in connection with the promotion or sale of securities.
The Martin Act gives the Attorney-General the power to take action against a fraudulent or misleading scheme to sell or promote real estate securities at various stages of the scheme. The Act gives the Attorney-General nearly plenary discretion to determine when to commence an investigation or *373 bring suit.[2] If he has evidence of acts or practices violative of the Act, he may investigate and bring suit before the submission of the offering plan. (See, Matter of Abrams v Long Beach Oceanfront Assocs. Ltd. Partnership, 136 Misc 2d 137; General Business Law §§ 352, 353.) The acceptance for filing of the offering plan is not an endorsement of the truthfulness of the plan and does not, standing alone, trigger any duty by the Attorney-General to investigate. (State of New York v Fashion Place Assocs., 224 AD2d 280, 282, lv dismissed 89 NY2d 917.) The Attorney-General may subsequently bring suit against a sponsor when he becomes aware that the offering plan contains misleading or fraudulent statements. (E.g., Matter of Whalen v Lefkowitz, 36 NY2d 75, 78.) The Attorney-General may then take action when relevant facts that arose after the initial offering plan are either not the subject of “prompt” amendments to the offering plan or are omitted from subsequent amendments to the offering plan. (State of New York v Fashion Place Assocs., supra, 224 AD2d, at 281; 13 NYCRR 18.1 [h]; 18.5 [a] [1].) Finally, the sale of securities without a current offering plan, which is a violation of General Business Law § 352-e (1) (a), might also give rise to a claim under section 352-c where the seller contemporaneous with the sale makes oral or written misrepresentations or fails to disclose material information to a buyer.
Application of the general rule of accrual to the Martin Act could thwart the Attorney-General’s exercise of these broad powers. To say that the Statute of Limitations begins to run whenever the Attorney-General could first bring a Martin Act claim fails to acknowledge that the Act reaches discrete “acts or practices” taken in furtherance of that scheme. (General Business Law § 352-c [1].)
The problems posed by the rigid application of the general rule of accrual are illustrated by the facts in this case. One of the sponsor’s alleged Martin Act violations was its failure to pay maintenance on the unsold shares held by it after conversion. A Martin Act claim arises from defendants’ alleged fail *374 ure to assess their ability to pay maintenance and to accurately report that fact in their offering plan. A second claim could arise from defendants’ failure to “promptly” amend the offering plan to reflect their falling behind on their maintenance payments. Third, a claim could arise from the omission of this fact from amendments to the offering plan. Finally, even after the expiration of the offering plan, a claim could arise under General Business Law § 352-c where the sponsor sells or promotes real estate securities without telling potential investors that it is in arrears of its maintenance payments. Under the general rule of accrual pressed by defendant, the Attorney-General’s power to reach all of these fraudulent acts under the Martin Act would be restricted if he failed to bring suit within six years of the first violation.
Accordingly, the court holds that each time the sponsor allegedly engaged in one of the “acts or practices” proscribed by General Business Law § 352-c (1) a new cause of action accrued, even if the new act or practice simply repeated the misrepresentations or omissions made previously by the sponsor. The court agrees with the few courts that have considered the question that a Martin Act claim accrues upon the acceptance for filing of a misleading offering plan. (See, West 90th Owners Corp. v Schlechter, 137 AD2d 456, 459 [dicta]; State of New York v Sonifer Realty, Sup Ct, NY County, Oct. 25, 1993, Moskowitz, J., index No. 43640/91.) However the court disagrees with these courts to the extent that they found that the only accrual date for Martin Act claims was the publication date for the offering plan.
It better serves the remedial purposes of the statute to hold that a new cause of action accrues each time the sponsor disseminates the offering plan — or repeats by other means the material misrepresentations or omissions contained in the offering plan — to potential purchasers. This holding recognizes that the Attorney-General is empowered not only to protect the investing public at large from misleading statements and omissions in connection with the sale of securities, but also to seek redress on behalf of individual investors who have been the victims of Martin Act violations.
Therefore all claims based on the dissemination of the offering plan or upon other material misrepresentations made to potential purchasers by the sponsor that occurred after May 30, 1990 are not time barred. The expiration of the offering plan on October 13, 1990 presumably meant that it was no longer made available by the Attorney-General to the general *375 public after that date. However, if the sponsor continued to give the stale offering plan to potential purchasers after the plan’s expiration date — or if it repeated the alleged misrepresentations or omissions contained therein in other documents or orally — it may be exposed to a claim under General Business Law § 352-c. Additionally, any “public offering or sale” of cooperative shares that took place after the sixth amendment expired is a violation of section 352-e (1) (a), which prohibits such sales or offerings without the prior filing of a current offering plan with the Attorney-General.
As an addendum to their Statute of Limitations argument defendants assert that 11 of the 17 apartments sold after May 30, 1990 were “given away” without any consideration paid to the sponsor, and that such “gifts” do not give rise to Martin Act claims. The argument is without merit. First, the Martin Act reaches fraudulent acts “where engaged in to induce or promote the * * * distribution [and] exchange” of securities, not just their sale. (General Business Law § 352-c [1].) Second, defendants’ claim that they chose recipients of these “giveaway” apartments out of disinterested beneficence is belied by evidence in the record that at least one of the apartments was transferred in satisfaction of a preexisting debt. Whether the recipients of the “give-away” apartments suffered any damages and are entitled to restitution is a determination to be made at trial.
CONCLUSION
The State’s motion for summary judgment is granted to the following extent. The court finds as a matter of law that defendants have violated General Business Law § 352-e (1) (a) with respect to any sales or distributions of shares representing interests in the cooperative corporation that occurred after the expiration of the sixth amendment of the offering plan on October 13, 1990. Defendants have also violated General Business Law § 352-c with respect to any sales or transfers of apartments that took place on or after May 30, 1990 and before October 13,1990. During this period, the offering plan was still current and the material misrepresentations and omissions contained therein, which are discussed above, were actionable.
After the expiration of the offering plan and its amendments on October 13, 1990, the misrepresentations and omissions contained therein are not actionable under General Business Law § 352-c unless plaintiff can show their dissemination by other means. The Attorney-General has thus far not brought *376 forth any facts tending to show that defendants continued to use the expired offering plan to sell apartments, or that defendants repeated — in other documents or orally — the misrepresentations and omissions contained in the offering plan.
Defendants’ cross motion for summary judgment is granted to the extent that all plaintiff’s claims against defendants that accrued prior to May 30, 1990 are dismissed as time barred. In all other respects defendants’ cross motion for summary judgment is denied.
[Portions of opinion omitted for purposes of publication.]

. Defendants argue that because Martin Act claims do not include all the elements of common-law fraud, notably scienter and reliance, they amount to “constructive” fraud claims that fall within the ambit of CPLR 213 (1), the general six-year limitations period that is applied in “an action for which no limitation is specifically prescribed by law”.
The weight of authority supports the State’s position that the applicable limitations provision for the Martin Act is CPLR 213 (8), which provides the Statute of Limitations for common-law fraud. (State of New York v Bronxville Glen I Assocs., 181 AD2d 516; Podraza v Carriero, 212 AD2d 331, lv dismissed
*372 86 NY2d 885.) In conjunction with CPLR 203 (g), CPLR 213 (8) provides that the Statute of Limitations is six years from the commission of the fraud or two years from the date of discovery, whichever is later. Because the State does not rely herein on the two-year provision the parties’ differences on this issue are immaterial.

. The Attorney-General may investigate “[w]henever it shall appear to [him] that” in the advertisement, sale, promotion, etc., of securities that any person or entity “shall have employed, or employs, or is about to employ” any misleading device or scheme. (General Business Law § 352 [1].) Similarly the Attorney-General may commence an action “[w]henever [he] shall believe from evidence satisfactory to him that any person, partnership, corporation * ** * has engaged in, is engaged or is about to engage in any of the practices or transactions [prohibited by the Martin Act].” (General Business Law § 353 [1].)