Nicole **TZOUGRAKIS** d/b/a
**offtherunway.com**,
**Plaintiff**

v.

**CYVEILLANCE, INC., PR** Newswire Association, Inc., Ziff–Davis TV, Inc., Home Automation Systems, Inc., Cmpmedia, Inc., V–Networks, Inc., Ziff–Davis, Inc. and Allbritton Communications Company, Defendants.

No. 99 CIV. 11849(CBM).

United States District Court,
S.D. New York.

May 22, 2001.

Gregor F. Gregorich and Edward L. Smith, Hollyer Brady Smith & Hines, LLP, New York City, for Plaintiff.

Thomas G. Leverage, Furey and Furey, P.C., Hempstead, NY, for Defendant Cyveillance, Inc.

Elizabeth McNamara and Jeff Blum, Davis, Wright, Tremaine, LLP, New York City, for Defendant PR Newswire, Inc.

David A. Schulz, Clifford Chance Rogers & Wells, LLP, New York City, for Defendant Ziff Davis Media, Inc.

## OPINION GRANTING SUMMARY JUDGMENT

MOTLEY, District Judge.

Plaintiff is Nicole Tzougrakis doing business as offtherunway.com. Plaintiff is suing based on New York state law claims of defamation damaging plaintiff's reputation and business. Plaintiff is claiming damages of $10,000,000 as well as costs and fees. The case is raised under the court's diversity jurisdiction as the parties are citizens of different states and the amount in controversy exceeds $75,000. Plaintiff also raises a federal question jurisdiction

trademark claim against one defendant, Cyveillance.

The original named defendants are Cyveillance, Inc., PR Newswire Association, Inc. (Newswire), Home Automation Systems, Inc., CMP Media Inc., V–Networks, Inc., Ziff–Davis, Inc. and Allbritton Communications Co. By stipulation this case was previously dismissed as to defendants V–Networks, Inc. and ZDTV, LLC which was sued as Ziff–Davis TV Inc. By order of June 29, 2000, the court also dismissed the claims against Home Automation, CMP Media and Albritton. The remaining three defendants are: Cyveillance, Newswire and Ziff–Davis.

Trial was originally scheduled for November 20, 2000. Defendants submitted motions for summary judgment and appeared on the trial date ready to argue the motions or proceed with trial. On May 3, 2001, the court heard argument on defendant's motions to grant summary judgment on plaintiff's federal and state claims. For the reasons set forth below, defendants' motions for summary judgment are hereby GRANTED.

## I. BACKGROUND

Plaintiff markets designer goods on the internet to retail customers. Plaintiff claims that all of her goods are legitimate, properly licensed designer products. Defendant Cyveillance is a service that conducts investigations of internet businesses searching for counterfeit goods or goods being sold without permission from the producer.

During the 1998 holiday season, as a publicity effort designed at attracting new customers, defendant Cyveillance conducted an investigation of internet sites selling designer goods to identify sites that were selling counterfeit or unlicensed goods. Cyveillance investigated these sites by using software which uses keywords and search logic to detect sites which might offer counterfeit goods. Cyveillance then used human staff to review the sites targeted by the software, using, *inter alia*, the following criteria: (1) was the site an unknown retailer; (2) were the goods offered at an implausibly low price; (3) did the designer in question licence its goods to be sold on the internet at that time; (4) was there any indication on the web page that the site was an authorized retailer of the goods; (5) what was the quality of the site's text and graphics; and (6) was any individual identified as owning or operating the site. Cyveillance did not attempt to contact any of the sites it identified. Cyveillance also did not order any goods from the sites to examine them.

After identifying a number of internet sites using the methods described above, Cyveillance issued a press release listing the sites, including plaintiff's site, offtherunway.com, that it claimed were selling counterfeit goods. Cyveillance transmitted its press release to defendant Newswire, a distributor of press releases. Cyveillance is a client of Newswire, which distributes press releases for more than 40,000 members to media outlets such as *The New York Times, The Washington Post, The Los Angeles Times, Reuters and the Wall Street Journal.* Newswire does not review the press releases but does format them prior to distribution to the media. Newswire had previously sent out two press releases for Cyveillance prior to the press release in question in this case. Newswire was aware that Cyveillance was a business that specialized in discovering the on-line sellers of counterfeit goods.

Defendant Ziff–Davis, a publisher which targets business and technology professionals, publishes *Inter@ctive Week,* a newsweekly magazine. In early December of 1998, *Inter@ctive Week* received Cyveillance's press release listing offtherun-

way.com as a marketer of counterfeit goods. Concetta Guglielmo, who had been a reporter for 15 years, was assigned the story and took the following steps to confirm the allegations in the press release: (1) Guglielmo questioned a Cyveillance spokesperson and Cyveillance's CEO about the report; (2) she investigated Cyveillance's client list to determine whether Cyveillance was a reputable company; (3) she visited the listed sites and confirmed the veracity of statements made by Cyveillance regarding the critera it applied; (4) she noted that offtherunway.com had no contact information listed anywhere in its website; and (5) she ran several searches on the internet in an attempt to obtain identifying or contact information as to the operator of the site.

In addition, Ziff–Davis claims that Guglielmo clicked on an email link attached to the offtherunway.com site. Guglielmo claims she sent the site an email stating that the site had been identified as a purveyor of counterfeit goods and asking for comment. Ziff–Davis claims that offtherunway.com never responded to the email and Guglielmo concluded that the owner was declining to comment. Plaintiff claims she never received the email. However, at the hearing on May 3, 2001, plaintiff's counsel did not dispute that the email was sent. In addition, it is undisputed that a later email sent on December 23, 1998 by Guglielmo as a test via the same email link also did not reach plaintiff.

*Inter@ctive Week* published the article in print on December 21, 1998 and posted the on-line version on December 22, 1998. On December 23, 1998, plaintiff sent an email to Guglielmo stating that she had seen the article on-line and that it was not true. Plaintiff's father also phoned Guglielmo's editor and furnished a phone number at which offtherunway.com could be reached. Ms. Guglielmo used this number to contact plaintiff. Guglielmo then contacted Cyveillance and informed Cyveillance that plaintiff was denying the allegations. Cyveillance instructed *Inter@ctive Week* to print a retraction. On December 23, 1998, *Inter@ctive Week* printed the retraction.

## II. DISCUSSION

As set forth below, plaintiff has not established a genuine issue of material fact as to whether Cyveillance was a competitor of plaintiff as required by federal trademark law. Plaintiff also has not established a genuine issue of material fact as to whether defendants were grossly irresponsible in their publication of the press release as required by New York state libel law. Therefore, the court grants defendants' motions for summary judgment.

### A. Standard of Review and Choice of Law

The standard for summary judgment is that "[u]ncertainty as to the true state of any material fact defeats the motion." *Gibson v. Am. Broad. Companies*, 892 F.2d 1128, 1132 (2d Cir.1989). The movant must demonstrate the absence of a genuine issue of material fact. An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the movant carries this burden, it then shifts to the non-moving party to produce concrete evidence sufficient to establish a genuine unresolved issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988). The court then must view the facts in the light most favorable to the non-movant and give that

party the benefit of all reasonable inferences from the evidence that can be drawn in that party's favor. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). "However, neither 'conclusory statements, conjecture, [n]or speculation' suffice to defeat summary judgment." *Johnson v. Delphi Energy & Engine Management Systems*, 181 F.3d 82, 82 (2d Cir. 1999). The court neither weighs evidence nor resolves material factual issues but only determines whether, after adequate discovery, any such issues remain unresolved because a reasonable fact finder could decide for either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gibson*, 892 F.2d at 1132.

It is undisputed that New York law applies to the state law libel claims. In addition, plaintiff brings a claim under federal trademark law. The court will address the federal claim first and then the liability of each of the defendants under New York libel law.

**B. The Lanham Act Claim**

■ Plaintiff claims defendant Cyveillance violated 15 U.S.C. § 1125(a) (the Lanham Act) which states that misleading representations about a copyrighted product are subject to civil action in the federal courts. The Lanham Act, however, does not apply in this case. The Second Circuit has held that federal copyright law applies only to misrepresentations about a company by competitors of that company. *See, e.g., New Era Publications Int. v. Carol Publ'g Group*, 904 F.2d 152, 159–60 (2d Cir.1990); *Consumers Union of U.S. v. General Signal*, 724 F.2d 1044, 1051 (2d Cir.1983); *Wojnarowicz v. Am. Family Ass'n*, 745 F.Supp. 130, 141 (S.D.N.Y. 1990).

The Lanham Act "has never been applied to stifle criticism of the goods or services of another by one, such as a consumer advocate, who is not engaged in marketing or promoting a competitive product or service." *Wojnarowicz*, 745 F.Supp. at 141. In this case, Cyveillance is a company whose business consists of investigating internet sites which offer the goods produced by Cyveillance's clients in order to ferret out those companies selling products without the producer's permission or selling counterfeit products. Plaintiff's company, offtherunway.com, sells designer clothing and other products. Plaintiff has not contested the fact that the two companies are engaged in very different businesses and do not offer any of the same products or services.

Therefore, the court grants summary judgment to defendant Cyveillance on Plaintiff's first claim under the Lanham Act.

**C. Libel Standard in New York**

In addition to her federal claim, plaintiff claims that all three defendants defamed her pursuant to New York State libel law.

■ Under New York law, a private plaintiff alleging libel regarding a matter of public concern must prove that the publisher of the allegedly defamatory statements acted "in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Chaiken v. VV Publishing Corp.*, 119 F.3d 1018, 1031 (2d Cir. 1997) (citing *Chapadeau v. Utica Observer–Dispatch, Inc.*, 38 N.Y.2d 196, 379 N.Y.S.2d 61, 341 N.E.2d 569, 571 (1975)). Although this standard was originally developed by the New York Court of Appeals in *Chapadeau* to protect the first amendment rights of newspaper publishers, the New York courts as well as the Second Circuit have extended the standard to uniformly cover non-media defendants "where

the communication at issue admits of measurement by the *Chapadeau* standard." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 101 (2d Cir.2000) (applying *Chapadeau* to charges of libel against an insurance company which published the full text of an allegedly defamatory independent report the company had commissioned).

In this case, it is undisputed that the plaintiff is a private person and that the subject matter of the alleged defamation, allegations of sale of counterfeit goods, is of public concern. Therefore, to recover for libel against either the media defendants, Newswire and Ziff–Davis, or the non-media defendant, Cyveillance, plaintiff must prove gross irresponsibility on the part of that defendant.

As shown below, under the *Chapadeau* standard, plaintiff has established no genuine issues of material fact regarding industry standards as to the gathering of information for producing the kind of press release at issue here. Plaintiff has also failed to produce evidence of a genuine issue of material fact regarding defendants' adherence to those standards.

### 1. Cyveillance's Liability

■ In determining whether a publisher acted in a grossly irresponsible manner, the court should consider whether the defendant: (1) followed sound journalistic practices in preparing the allegedly defamatory article; (2) followed "normal procedures," including editorial review of the copy; (3) had any reason to doubt the accuracy of the source relied upon and thus a duty to make further inquiry to verify the information; and (4) could easily verify the truth. *See Chaiken*, 119 F.3d at 1031. The New York Court of Appeals has held that sound journalistic practices under the "standard of 'gross irresponsibility' [require] no more than that a publisher utilize methods of verification that are reasonably calculated to produce accurate copy." *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 435 N.Y.S.2d 556, 416 N.E.2d 557, 561–62 (1980).

■ Plaintiff has not raised a genuine issue of material fact as to whether Cyveillance used sound journalistic practices, followed normal procedures, or had any reason to doubt the accuracy of its methods. Plaintiff argues that sound journalistic practices require a publisher to contact all sides of the story and, therefore, Cyveillance was grossly irresponsible. However, plaintiff fails to provide proof of this claim. Cyveillance has presented evidence in the form of a declaration of John Bliss, the former president of the International Anti–Counterfeiting Coalition, that the methods uses by Cyveillance are standard in the industry for conducting an investigation of this kind. Moreover, Cyveillance notes that consumer advocates make a practice of not contacting the internet sites they target, as contacting them could drive the sites underground. Plaintiff has produced no evidence to contradict this contention, other than the declaration of Edward Smith, a purported expert on libel and counsel to plaintiff. Smith has no personal knowledge of the issues in the case. Smith's declaration consisted of unsupported allegations and conclusions of law.[1] Such statements do not suffice to

---

1. Cyveillance further argues that the court may not consider Smith's declaration because plaintiff never designated any expert witnesses or submitted a written report of Smith's testimony to defendants pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure. The last day under the court's scheduling order for plaintiff to designate witnesses was August 31, 2000. Plaintiff submitted Smith's declaration on November 16, 2000 and has never designated Smith as an expert witness. Therefore, Cyveillance claims

defeat summary judgment. *See Johnson,* 181 F.3d 82.

Plaintiff has produced no evidence other than unsupported allegations to show that Cyveillance's methods of information gathering do not meet acceptable standards of information gathering. Cyveillance screened the websites using criteria that had worked in the past, first using computer programs, then using human staff to verify that the sites were illegitimate. Plaintiff argues in her motion for an extension of time for discovery that counsel was unable to ascertain what criteria were used by Cyveillance's computer program or how the program works. Therefore, plaintiff claims that Cyveillance cannot assert that the criteria or program operation were reasonably designed to produce an accurate result. However, Cyveillance used human staff to filter the sites after the computer program had identified them. Plaintiff has had access since the close of discovery to the critera used by the human staff. As discussed above, the court finds that the criteria and methods used by the human staff were reasonably designed to produce an accurate result. Therefore, the computer program itself is irrelevant, other than the fact that the same or similar programs had been used successfully by Cyveilllance in the past. The methods used by Cyveillance to identify counterfeit websites were reasonably designed to produce an accurate result. Plaintiff has produced no evidence that journalistic standards require more. Therefore, the court grants summary judgment to Cyveillance.

*2. Liability of Republishers*

This court will now consider the standard that applies to defendants Newswire and Ziff–Davis.

A "company or concern which simply republishes a work is entitled to place its reliance upon the research of the original publisher, absent a showing that the republisher 'had or should have had, substantial reasons to question the accuracy of the articles.'" *Karaduman v. Newsday, Inc.,* 51 N.Y.2d 531, 435 N.Y.S.2d 556, 416 N.E.2d 557, 561–62 (1980) (granting summary judgment where there was no evidence in the record that a republisher had cause to doubt the veracity of the statements in question or the integrity of the reporters who gathered the underlying facts). In *Karaduman,* the New York Court of Appeals held that a republisher cannot be held grossly irresponsible in the absence of facts that "would arouse the suspicions of a careful publisher or that would give cause for further inquiry." *Id.* The *Karaduman* court went on to say that a republisher has no realistic choice but to assume that carefully designed internal procedures for ensuring accuracy have been effective. Those internal procedures need be "no more than that a publisher utilize methods of verification that are reasonably calculated to produce accurate copy." *Id.*

The Second Circuit reiterated the *Karaduman* standard in *Chaiken,* stating that "[a] publisher will not be liable for an article later shown to be false if it relies upon the integrity of a reputable author and has no serious reason to question the accuracy of the information provided by that author." *Chaiken,* 119 F.3d at 1032 (where original author of allegedly defamatory article had previously written articles for publisher and for other major publications and the contents of the article and external circumstances themselves were not of the nature to suggest falsity). "Ab-

that Smith's testimony is inadmissible at trial and under Rule 56(e) of the Federal Rules of Civil Procedure the court may not consider the testimony. As the court has determined

that Smith's testimony does not raise a genuine issue of material fact, we decline to address the other issues regarding Smith's declaration.

sent 'obvious reasons' to doubt the truth of an article, a [publisher] does not have the 'intolerable burden of rechecking every reporter's assertions and retracing every source before' publication." *Chaiken*, 119 F.3d at 1032; *see also Gaeta v. New York News Inc., et al.*, 62 N.Y.2d 340, 477 N.Y.S.2d 82, 465 N.E.2d 802, 806–07(1984) (holding no gross irresponsibility where source had previously furnished accurate information, facts had inherent plausibility and publisher had no reason to suspect any animus toward the plaintiff).

### a. Newswire

■ Defendant Newswire claims that its role in the publication of the allegedly defamatory press release was closer to that of a distributor, such as a telegraph company or a printer, than that of a publisher of the information. Therefore, Newswire argues it cannot be held responsible for libel absent a showing of knowledge that the release was defamatory. *See Lerman v. Flynt Distributing Co., Inc.*, 745 F.2d 123, 139 (2d Cir.1984). However, it appears from the facts submitted to the court that Newswire had some editorial control over the press release. Newswire itself states that it "formatted" the press release before distributing it to the media. Nevertheless, as described below, plaintiff cannot establish that Newswire's conduct reaches even the lesser standard of gross irresponsibility applied to publishers. Therefore, the court need not determine at this time whether Newswire was a publisher or a distributor in order to grant summary judgment to defendant Newswire.

Newswire received the press release from its member, Cyveillance. It had previously published releases from Cyveillance and had never before had any allegations of libel against one of Cyveillance's releases. Newswire was aware of Cyveillance's reputation as a reputable company that investigated counterfeiters purveying goods on the internet. The press release

addressed issues that were the basis of Cyveillance's business. In this case, the source of the story had previously provided accurate information and there were no facts which should have aroused the suspicions of Newswire or that would give cause for further inquiry. Therefore, Newswire was not grossly irresponsible in republishing the press release. Consequently, the court grants summary judgment to Newswire.

### b. Ziff–Davis

■ Plaintiff also has not produced evidence that defendant Ziff–Davis' actions were grossly irresponsible. Ziff–Davis' reporter, Guglielmo, conducted an adequate investigation of the facts received from Cyveillance. Although she did not actually speak with offtherunway.com, the site had no direct contact information posted. Guglielmo also was unable to discover any contact information after performing a sufficiently diligent search. It is undisputed that Guglielmo attempted to use the email link provided by offtherunway.com but that the link did not work. Furthermore, absent obvious reasons to doubt the truth of the article, Ziff–Davis was entitled to rely on Guglielmo's, a trusted reporter's, representations without rechecking her assertions or retracing her sources. *See Chaiken*, 119 F.3d at 1032. Therefore, because plaintiff has not shown that Ziff–Davis was grossly irresponsible, this court grants Ziff–Davis' motion for summary judgment.

## III. CONCLUSION

For the reasons set forth above, the court hereby GRANTS defendants' motions for summary judgment on all claims.

**SO ORDERED.**