POLISH AMERICAN IMMIGRATION RELIEF COMMITTEE, INC., et al., Appellants-Respondents, v RELAX et al., Respondents-Appellants.

First Department, April 13, 1993

### APPEARANCES OF COUNSEL

*Edwin I. Gorski* for appellants-respondents.

*Jonathan A. Dachs* of counsel *(Shayne, Dachs, Stanisci, Corker & Sauer,* attorneys), for respondents-appellants.

### OPINION OF THE COURT

CARRO, J. P.

Plaintiffs, the Polish American Immigration Relief Committee (PAIRC), and its president, Janusz Krzyzanowski, commenced a libel action against the defendants, Michael Kuchejda and Andrew Heyduk, the publisher and editor, respectively, of a small-circulation Polish-language magazine called "Relax", also a defendant, based upon a letter to the editor and an interview published in the February 4, 1989 issue of Relax. The letter, written by a recent Polish immigrant, Marian Jablonski, complains in emotional and hyperbolic terms about his family's treatment, upon and after their arrival in the United States, by PAIRC and another organization, the Polish American Congress.

The only arguably defamatory statement in the letter is Mr. Jablonski's inveighing that "I had not figured that at the PAIRC * * * we would have to deal with thieves who should have been put to prison long ago." An interview with Mr. Jablonski and his wife, and an individual identified as Mrs. Banaszewska, none of whom were named as defendants, which elaborated on the concerns expressed in the letter, asserted that "PAIRC is a madhouse. For instance, they won't pick up people at the airport. Last year there was nobody to meet four families. So the families talked about it on the radio * * * but [PAIRC's Chicago representative] always comes up with something new." Other comments in the interview which form the basis of the complaint include: "As I said, I don't regret having left Poland. There's a lesson for me: forget the PAIRC, forget the Polish American Congress, forget others. Let them do their fund raisers that nobody understands the aim of, let them pretend they are just and democratic, let them have their pictures taken with whomever they choose, let them listen to national anthems. I myself have found a job in my own occupation, and so I now have a chance to move out of

here and really start living on my own instead of just treading water. The farther away from false do-gooders, the better." The reference to PAIRC as "thieves who should have been put to prison long ago," was obviously tied to Jablonski's claim in the interview that PAIRC pays rent for unoccupied apartments in a building that "is rumored * * * [to be] owned by the director of the PAIRC * * * You know how it is. The PAIRC get funds for immigrants from the Americans, from the federal government, so it is better to report that all the apartments are occupied, that rent must be paid and so on. This way business is booming."

The conversation and letter were published in Relax without any editorial approval or suggestion that the facts and opinions stated therein were accurate, and were prefaced by a statement of Mr. Heyduk that "[t]he text really speaks for itself, yet if anything remains to be said, it is the institutions referred to that should say it." In an affidavit annexed to defendants' motion for summary judgment, Kuchejda averred that he offered to publish an article presenting plaintiffs' version of the matters discussed therein, but he received no response. Heyduk similarly averred that prior to publishing the article he tried repeatedly to speak with PAIRC's Chicago representative for her comment or response, but was unable to contact her despite his "persistent efforts," which he observed confirmed one of the allegations in the article that this particular PAIRC representative "is almost never there."

On a prior motion, the Supreme Court had dismissed the complaint pursuant to CPLR 3016 (a) on the ground that the particular words complained of were not identified. This Court reversed on the ground that CPLR 2101 (b) and 3016 (a) were satisfied by defendants' appending a translation of the article to plaintiffs' affirmation in opposition to the motion to dismiss (Polish Am. Immigration Relief Comm. v Relax, 172 AD2d 374). Plaintiffs thereafter moved for summary judgment on the ground that the statements complained of constituted libel per se, and defendants cross-moved for summary judgment on the ground that the statements complained of were constitutionally protected opinion. Defendant Relax further urged that it was not a proper party, as it was not a business entity of any sort, only the name of a publication. The IAS Court denied the respective motions for summary judgment, but dismissed the complaint as to Relax on the ground of lack of adequate service. For reasons that follow, the defendants'

cross motion for summary judgment is granted, and the order appealed from is otherwise affirmed.

In a recent decision construing the limits of constitutionally protected speech, the Court of Appeals examined comments made by a participant at a public hearing in opposition to an application for a building permit to create a sidewalk cafe, in which he stated that the proposed restaurant "denigrated" the area, and that the restaurant lease was "illegal" and "as fraudulent as you can get and it smells of bribery and corruption." *(600 W. 115th St. Corp. v Von Gutfeld,* 80 NY2d 130, 134, 135.) The Court examined the statements under the differing standards of the United States Constitution, and article I (§ 8) of the New York State Constitution *(see, Immuno AG. v Moor-Jankowski,* 77 NY2d 235, *cert denied* — US —, 111 S Ct 2261), and concluded, under either standard, that those statements did not allege facts, and were thus constitutionally protected "opinion." *(Supra,* at 145.)

The dispositive issue under either analysis, the Court held, is whether a reasonable listener could conclude that the defendant is conveying facts *(600 W. 115th St. Corp. v Von Gutfeld, supra,* at 139). Under the Federal standard, the court must first define the words as they are commonly understood, then determine whether the words are subject to verification, and lastly, examine the type of speech at issue. Only if the expression fell within the category of loose, figurative, or hyperbolic speech could the impression that an apparently verifiable assertion was intended, be negated *(supra; see, Greenbelt Publ. Assn. v Bresler,* 398 US 6, 14 [term "black-mail" used to describe real estate developer's bargaining position not actionable when spoken by a citizen at a public meeting]). Given that the comments were made by a citizen at a heated public debate, the Court of Appeals reasoned that their import and tenor, under Federal constitutional analysis, did not convey to the listener factual content, or suggest that the speaker had undisclosed knowledge of actual facts. The Court of Appeals likewise found the statements protected under the broader "content, tone and purpose" analysis mandated by the New York State Constitution (80 NY2d, *supra,* at 145).

In *McGill v Parker* (179 AD2d 98), this Court examined allegedly defamatory statements contained in pamphlets and leaflets concerning the carriage horse trade in New York City. We concluded that the matter was one of public concern, and that "[t]he reasonable reader of the allegedly defamatory

statements—that the veterinary care was inadequate and that the horses were maintained under inhumane conditions—would recognize that they represented opinion, expressed as part of an ongoing controversy and designed primarily to persuade." *(Supra,* at 110.) This Court granted defendants' motions to dismiss the complaint.

In *Gross v New York Times Co.* (180 AD2d 308, *lv granted* 81 NY2d 703), this Court affirmed an order dismissing a defamation complaint, finding that negative newspaper articles concerning plaintiff, a former Chief Medical Examiner of the City of New York, were nonactionable opinion. This Court observed that a "pure opinion", a statement of opinion which discloses the facts relied on, or does not suggest that it is based on undisclosed facts, is protected under the New York State Constitution *(supra,* at 311), whereas statements of "mixed opinion" by a media defendant published with actual malice as to the facts underlying the opinion are actionable *(supra,* at 312). Significantly, this Court found that allegations that plaintiff had directed that autopsy entries be altered, or that autopsy results were misstated or inaccurate, while susceptible to interpretation as charging criminality, were equally capable as being interpreted as reflecting only the exercise of management prerogative, incompetence, or error. "That a given statement *might* be interpreted as an allegation of wrongdoing is not sufficient to render it actionable." *(Supra,* at 317.)

The words at issue here are clearly rhetorical hyperbole and vigorous epithet, and thus constitute nonactionable expressions of opinion under Federal or State constitutional standards. The fact that the publication consisted of a letter to the editor and an interview further supports the view that a reasonable reader would not interpret the expressions as factual. No reasonable person would conclude that PAIRC was literally a "madhouse", or that actual criminality is charged by the epithets "thieves" and "false do-gooders". Even the statement that an unnamed director of PAIRC may have realized a financial gain from renting unoccupied apartments, similar to the allegations leveled at the Medical Examiner in *Gross (supra),* does not explicitly charge criminality, and is susceptible of an interpretation that even if improper, no actual law was broken. Further, there is no indication that the defendants had access to any undisclosed facts on the subject. The statements were thus "pure opinion", and in context of this publication, not actionable.

Plaintiffs do not dispute that they are limited-purpose public figures, yet they tendered no evidence sufficient to raise a factual issue regarding defendants' actual malice *(see, Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065). Moreover, since the letter and interview involve matters within the sphere of legitimate public concern, plaintiffs also failed to raise any factual issue of the defendants' gross irresponsibility in publishing them *(see, Gaeta v New York News,* 62 NY2d 340). Both Mr. Kuchejda and Mr. Heyduk alleged facts which established that they acted without malice or gross irresponsibility in publishing the letter and interview, including an offer to plaintiffs' attorney to publish any response from PAIRC with respect to the facts and conclusions set forth therein, to which PAIRC never responded. In this regard, we note that the Supreme Court has stated that "[t]he first remedy of any victim of defamation is self-help—using available opportunities to contradict the lie or correct the error and thereby to minimize its adverse impact on reputation" *(Gertz v Robert Welch, Inc.,* 418 US 323, 344).

Soon after the letter and interview were published, defendants solicited an article written from the point of view of someone who had represented an immigrant relief organization. Such an article was published in Relax, which explained that immigrants coming to the United States from Poland often expected too much from relief organizations, and as a consequence were deeply disappointed and often made complaints about services rendered by organizations such as PAIRC. That article advised readers to be cautious and fair in evaluating statements made by dissatisfied immigrants, referring to the previously published letter and interview regarding PAIRC. Plaintiffs submitted no evidence to rebut defendants' showing of the absence of malice or gross irresponsibility on their part in publishing the letter and interview. Accordingly, the defendants' cross motion for summary judgment should have been granted.

The fundamental free speech considerations pertinent to this case were articulated by Judge Kaye in *Immuno AG. v Moor-Jankowski* (77 NY2d, *supra,* at 255) as follows: "The public forum function of letters to the editor is closely related in spirit to the 'marketplace of ideas' and oversight and informational values that compelled recognition of the privileges of fair comment, fair report and the immunity accorded expression of opinion. These values are best effectuated by according defendant some latitude to publish a letter to the

editor on a matter of legitimate public concern—the letter's author, affiliation, bias and premises fully disclosed, rebuttal openly invited—free of defamation litigation. A publication that provides a forum for such statements on controversial matters is not acting in a fashion 'at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected' *(Garrison v Louisiana,* 379 US 64, 75), but to the contrary is fostering those very values."

Accordingly, the order of the Supreme Court, New York County (Harold Tompkins, J.), entered December 10, 1991, which, *inter alia,* denied plaintiffs' motion and defendants' cross motion for summary judgment, and dismissed the action against defendant Relax on jurisdictional grounds, should be modified, on the law, without costs, to grant defendants' cross motion for summary judgment, and as so modified, affirmed. The Clerk is directed to enter judgment dismissing the complaint.

Milonas, Ellerin, Kupferman and Rubin, JJ., concur.

Order of the Supreme Court, New York County, entered December 10, 1991, which, *inter alia,* denied plaintiffs' motion and defendants' cross motion for summary judgment, and dismissed the action against defendant Relax on jurisdictional grounds, is modified, on the law, without costs, to grant defendants' cross motion for summary judgment, and as so modified, affirmed.