OPINION OF THE COURT
Judith J. Gische, J.
Defendant, pro se, brought a motion for summary judgment dismissing the complaint (motion sequence No. 005). Plaintiff subsequently brought its own motion for summary judgment (motion sequence No. 006). The motion and cross motion are so integrally intertwined that the court is considering them and all papers submitted thereon together.
A preliminary issue raised in defendant’s motion is his claim that the court lacks personal jurisdiction over him. This issue was raised in previous motion practice. By decision and order dated October 4, 2004, made by the Honorable Saralee Evans, the motion to dismiss for lack of personal jurisdiction was denied. Justice Evans’ decision is law of the case and the issues decided therein may not be revisited by this court. (People v Evans, 94 NY2d 499 [2000].)
This action was commenced by a summons and complaint dated March 11, 2004. Defendant Ronald DiGiovanni served his answer on or about June 28, 2004. Plaintiff has discontinued its action against Network Solutions, Inc. Issue has been joined among the remaining parties and this motion has otherwise been timely brought. (CPLR 3212; Brill v City of New York, 2 NY3d 648 [2004].)
Plaintiff, a Pennsylvania corporation in the business of providing extended warranties on used cars, has asserted six causes of action against defendant. They are as follows: (1) intentional interference with prospective economic advantage (first cause of action); (2) coercion, harassment, extortion (second cause of action); (3) defamation/trade libel (third cause of action); (4) civil Racketeer Influenced and Corrupt Organizations Act (RICO) (fourth cause of action); (5) infringement/false designation of origin and unfair competition (fifth cause of action); and (6) a permanent injunction against the publishing of a certain Web *1000 site and otherwise publishing certain speech (sixth cause of action).
Defendant claims that now that discovery has been completed, he is entitled to summary judgment dismissing each and every asserted cause of action. Plaintiff’s separate motion for summary judgment seeks a determination that as a matter of law it is entitled to summary judgment on its third cause of action for defamation/trade libel and its sixth cause of action enjoining the future publication of the allegedly defamatory material.
It is undisputed that plaintiff, a Pennsylvania company, contracts with individuals to provide service warranties on used cars. On May 20, 2000, plaintiff provided a “standard contract” to cover a 1994 GMC Sonoma truck. The contract was made in New Jersey, where defendant lived at the time.
Defendant filed a claim under the service contract that plaintiff denied. Defendant then brought a small claims action in the State of New Jersey, based upon breach of contract. It was eventually settled for the sum of $2,500.
Defendant thereafter composed a Web site claiming that plaintiff engaged in deceptive business practices. This type of Web site, which criticizes a company’s products or services, is commonly known as a “gripe site.” (See Richard, Hey, You, Get off of my Trademark!, NYLJ, Jan. 24, 2005, at S10, col 1.)
Plaintiff claims that after the Web site was designed and sent to a limited audience, they were contacted by defendant who threatened to publish the Web site on the World Wide Web and go to the media. Defendant also threatened to go to the Pennsylvania Attorney General. Defendant stated he would expose the unfair practices of plaintiff corporation unless it did the “right thing.” Plaintiff claims that the references to the “right thing” were a veiled attempt to extort money out of it, over and above the small claims settlement previously made. Plaintiff claims that when it did not accede to defendant’s demands, he published the Web site on the World Wide Web.
Defendant denies he sent the letters relied upon by plaintiff to prove the so-called extortion plot. He claims that plaintiff is relying on letters he did send which plaintiffs representatives subsequently altered. In any event, defendant argues that the letters, which ask plaintiff to “do the right thing,” can hardly be construed as extortion.
Defendant denies that the Web site was actually published on the World Wide Web. He does admit, however, that it was avail *1001 able on the Web from at least mid to late January 2004 to anyone who happened to know the actual URL of “www.pennwarrantylitigation.com.” He does not deny sending copies of the content of the site to plaintiffs employees. Defendant asserts the defense of “truth,” claiming that plaintiff did engage in the unfair practices he has accused it of on the Web site. Alternatively, defendant claims that the content of the Web site is protected as his opinion.
Discussion
The movant seeking summary judgment has the initial burden of setting forth evidentiary facts to demonstrate its entitlement to judgment in its favor as a matter of law, without the need for a trial. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980].) Only if the burden is met does it then shift to the party opposing the motion to establish the existence of disputed material issues of fact that would require a trial of the action. (Zuckerman v City of New York, supra.) When the issues raised in the action are clearly ones of law, then the court may and should resolve them without the need for a testimonial hearing. (See Hindes v Weisz, 303 AD2d 459 [2d Dept 2003].)
A. Defamation/Trade Libel
Since each of the parties believes that they are entitled to summary judgment on the third cause of action, the court considers the relief requested as to such cause of action first. The third cause of action, relying upon the Web site created by defendant, alleges that defendant has defamed and engaged in “trade libel” of plaintiff. In its motion, plaintiff claims that the defamation constitutes libel per se, because defendant’s statements directly pertain to its business practices and trade. Plaintiff further claims that defendant’s Web site is libelous per se because it accuses plaintiff of criminal conduct, to wit: fraud.
The content of the Web site is not disputed. It is a 45-page document. There are some generally negative comments about the car service warranty industry, the auto insurance industry, and New Jersey judges. Most of the Web site is devoted to the New Jersey small claims action between the parties. Defendant offers conclusions about how plaintiffs answers to interrogatories in the New Jersey small claims action prove Penn Warranty’s pervasive deceptive business practices.
While plaintiff alleges that the document is filled with defamatory statements, in the complaint and in this motion, plaintiff identifies only approximately eight specific statements. CPLR *1002 3016 (a) requires that the particular words complained of be set forth in a complaint alleging defamation. Thus, in evaluating plaintiff’s claim, only the words alleged in the complaint as constituting the libel may be considered by the court as the actionable language. Plaintiff’s claims of other unidentified defamations contained in the Web site may not be relied upon in support of this action. (Khan v Duane Reade, 7 AD3d 311 [1st Dept 2004].) In this case, the hard printed copy of the Web site was never made part of the original complaint. Consequently, plaintiff is specifically bound by the alleged defamatory words contained in the four corners of the complaint. (See Sassower v Finnerty, 96 AD2d 585 [2d Dept 1983], appeal dismissed 61 NY2d 756 [1984].)
The actual language on the Web site that plaintiff claims constitutes the libel is as follows:
(1) Plaintiff “cleverly” interprets its standard automobile warranty contracts;
(2) Plaintiff is a “blatantly dishonest company”;
(3) Plaintiff is a “crooked company”;
(4) Plaintiff has “been ripping off its contract holders for quite a while”;
(5) The public has been a victim of plaintiffs “greed”;
(6) Plaintiff has committed “fraud”;
(7) Plaintiff “has been committing fraud on a grand scale”; and
(8) Plaintiff has been “running scams.”
Defendant does not dispute that such language is contained on a Web site he developed. He claims that he never posted it on the World Wide Web. He further claims that it is the truth and/or that it is his personal opinion.
Defamation is the injury to one’s reputation, either by written expression (libel) or oral expression (slander). (Morrison v National Broadcasting Co., 19 NY2d 453 [1967].) The elements of libel are: (1) a false and defamatory statement of fact; (2) regarding the plaintiff; (3) which is published to a third party; and which (4) results in injury to plaintiff. (Idema v Wager, 120 F Supp 2d 361 [SD NY 2000]; Ives v Guilford Mills, Inc., 3 F Supp 2d 191 [ND NY 1998].) Certain statements are considered libelous per se. They are limited to four categories of statements that: (1) charge plaintiff with a serious crime; (2) tend to injure plaintiff in its business, trade or profession; (3) plaintiff has some loathsome disease; or (4) impute unchastity. (Liberman v *1003 Gelstein, 80 NY2d 429 [1992]; Harris v Hirsh, 228 AD2d 206 [1st Dept 1996].) Where statements are libelous per se, the law presumes that damages will result and they need not be separately proved.*
“Trade libel,” although closely related to libel per se, is not the same. Trade libel is the knowing publication of false and derogatory material regarding another’s business, that is calculated to prevent others from doing business with the defamed party or otherwise interferes with its business relationships. The party alleging trade libel must establish that the publication of the false material was a substantial factor in inducing others not to have business dealings with it. (Waste Distillation Tech, v Blasland & Bouck Engrs., 136 AD2d 633 [2d Dept 1988]; United States Luggage Co., L.P. v Vormittag Assoc., Inc., 5 Misc 3d 1019[A], 2004 NY Slip Op 51446[U] [Sup Ct, Nassau County 2004].) Trade libel requires proof of special damages, while libel per se, even if based on disparagement in business, requires no such proof of special damages.
As with any claim for defamation, both libel per se and trade libel are defeated by a showing that the published statements are substantially true. (Newport Serv. & Leasing, Inc. v Meadowbrook Distrib. Corp., 18 AD3d 454 [2d Dept 2005].) They are also subject to a defense that the material, when read in context, would be perceived by a reasonable person to be nothing more than a matter of personal opinion. (Immuno AG. v MoorJankowski, 77 NY2d 235 [1991].)
It is the court’s responsibility in the first instance to determine whether a publication is susceptible to the defamatory meaning ascribed to it. (Golub v Enquirer/Star Group, 89 NY2d 1074 [1997]; Rejent v Liberation Pubis., 197 AD2d 240 [1st Dept 1994].) A court should neither strain to place a particular construction on the language complained of nor strain to interpret the words in their mildest and most inoffensive sense to hold them nonlibelous. (Rejent v Liberation Publs., supra.)
Competing with an individual’s right to protect one’s own reputation is the constitutionally guaranteed right to free speech. One of the staples of a free society is that people should be able to speak freely. (US Const Amend I; NY Const, art I, § 8.) Consequently, statements that merely express opinion are *1004 not actionable as defamation, no matter how offensive, vituperative or unreasonable they may be. (Immuno AG. v MoorJankowski, supra.) Moreover, in the context of statements pertaining to issues of consumer advocacy, courts have been loathe to stifle someone’s criticism of goods or services. (Tzougrakis v Cyveillance, Inc., 145 F Supp 2d 325 [SD NY 2001]; Themed Rests., Inc. v Zagat Survey, LLC, 21 AD3d 826 [1st Dept 2005]; Frommer v Abels, 193 AD2d 513 [1st Dept 1993]; Behr v Weber, 172 AD2d 441 [1st Dept 1991].) The courts have recognized that personal opinion about goods and services is a matter of legitimate public concern and protected speech.
Preliminarily, the court rejects defendant’s defense that the allegedly defamatory statements were never published because he never posted the Web site to the World Wide Web. Even were his claim true, defendant has admitted that, for a brief time in January 2004, it was available on the Internet to those possessing a certain URL address. Moreover, defendant does not dispute that he sent a hard copy of the Web site to many of plaintiffs employees. “Publication” is a term of art, signifying communication of the defamatory statement to a third party. (Ostrowe v Lee, 256 NY 36 [1931]; Rossignol v Silvernail, 146 AD2d 907 [3d Dept 1989].) Moreover, a communication to an agent of the person defamed is considered a publication to a third party. (Teichner v Bellan, 7 AD2d 247 [4th Dept 1959].) Here, defendant admits communication of the Web site to third parties. The parties’ dispute about the extent of such publication does not detract from the conclusion that there was publication, as that term is used, in the context of a defamation claim.
The court holds that the cause of action for libel, however, whether based upon libel per se or trade libel, should be dismissed because the challenged speech is merely a statement of defendant’s personal opinion about the quality of services provided by plaintiff company.
In deciding whether the challenged language constitutes statements of fact or opinion, the court’s role is to determine whether the reasonable reader would have believed that the statements were conveying facts about the plaintiff. (Millus v Newsday, Inc., 89 NY2d 840 [1996]; Brian v Richardson, 87 NY2d 46 [1995].) The analysis requires the court to look at the content of the whole communication, its tone and apparent purpose, in order to determine whether a reasonable person would view it as expressing or implying facts. (Immuno AG. v Moor-Jankowski, supra.)
*1005 The New York Court of Appeals has held that the following factors should be considered in distinguishing fact from opinion: (1) whether the language used has a precise meaning or whether it is indefinite or ambiguous, (2) whether the statement is capable of objectively being true or false, and (3) the full context of the entire communication or the broader social context surrounding the communication. (Brian v Richardson, supra.) Moreover, the Court of Appeals makes a distinction between a statement of opinion that implies a factual basis that is not disclosed to the reader and an opinion that is accompanied by a recitation of facts on which it is based. (Gross v New York Times Co., 82 NY2d 146 [1993].) The former is actionable, the latter is not.
Here, the Web site presents to others as a personal statement by its maker. The facts on which the maker bases his conclusions are his personal small claims lawsuit with plaintiff. Facts from that New Jersey file are disclosed and they are the “facts” on which defendant reaches his conclusions stated on the Web site.
The alleged defamatory statements in the complaint are susceptible to ambiguous meanings. Indeed, in the complaint the plaintiff had to frame or augment the allegedly defamatory words with its own words in order to even allege that the language was defamatory. Loose, figurative or hyperbolic statements, even if deprecating to the plaintiff, are not actionable. (Dillon v City of New York, 261 AD2d 34 [1st Dept 1999].)
Perhaps most compelling, however, is the fact that the Web site, when viewed in its full context, reveals that defendant is a disgruntled consumer and that his statements reflect his personal opinion based upon his personal dealing with plaintiff. They are subjective expressions of consumer dissatisfaction with plaintiff and the statements are not actionable because they are defendant’s personal opinion.
Since the statements are protected opinion, the third cause of action is dismissed, regardless of whether it is based on libel per se or trade libel. In the context of the trade libel, however, the complete absence of any proof of special damages provides an additional basis for dismissal. This is a required element of trade libel.
Based on the above reasoning, the court holds that defendant’s motion for summary judgment dismissing the third cause of action is granted and that plaintiff’s motion for summary judgment on its third cause of action is denied.
*1006 B. Intentional Interference with Prospective Economic Advantage
The tort of intentional interference with prospective economic advantage requires a showing that, through the intentional and wrongful acts of defendant, identified third parties were prevented from entering into a business relationship with plaintiff. (Levy v P&R Dental Strategies, 302 AD2d 255 [1st Dept 2003]; Joan Hansen & Co. v Everlast World’s Boxing Headquarters Corp., 296 AD2d 103 [1st Dept 2002].) Once defendant makes out his prima facie case for dismissal, plaintiff is required to raise a triable issue of fact by submitting evidence that there is a “reasonable certainty” that a contract would have been entered, but for defendant’s wrongful interference. (Long Is. Univ. v Grucci For Congress, Inc., 10 AD3d 412 [2d Dept 2004].)
Defendant has shown that during discovery he asked plaintiff to identify for him those people plaintiff is claiming would have entered into service contracts with it, but were prevented or dissuaded from doing so after reading defendant’s Web site. Defendant has asserted that not a single possible customer was identified by plaintiff. It is on this basis that defendant seeks summary judgment dismissal of the claim.
Plaintiff, in opposition to summary judgment, has not identified even one lost customer. Since one of the elements of this cause of action is an identification of the lost business with reasonable certainty, and plaintiff has not adduced a scintilla of proof of lost business on this motion for summary judgment, the cause of action must be dismissed.
C. Coercion, Harassment, Extortion
This combined cause of action is based upon plaintiffs claims that it received letters from defendant that he would publish the Web site he created, and disparage plaintiff to the press and the Pennsylvania Attorney General, unless it did the “right thing.” Defendant denies that he authored the letters in the form plaintiff claims. In any event he claims that asking the company to do the “right thing” cannot be construed as an extortionate demand.
It is well established that no civil cause of action for coercion (or related causes of action) will lie if the threatened conduct is something that the defendant has a right to do anyway. (Wehringer v Standard Sec. Life Ins. Co. of N.Y., 57 NY2d 757 [1982]; Niagara Mohawk Power Corp. v Testone, 272 AD2d 910 [4th Dept 2000].)
*1007 At bar the defendant clearly had the right to make complaints to the Pennsylvania Attorney General’s office and the press about what he perceived was unfair treatment at the plaintiff s hands. He has the right to lodge complaints, regardless of whether they are ultimately found to have merit.
The court has already held in this decision that the Web site constitutes constitutionally protected opinion. Since defendant has the right to express his opinion to the public about plaintiff s services, the “threat” to express such personal opinion cannot be actionable as coercion, extortion or any related tort.
The court does not need to reach the issue of whether defendant’s ambiguous request that plaintiff “do the right thing” constitutes an implied threat for money in order to find that this cause of action lacks merit.
D. Civil RICO
The RICO statutes make it unlawful to use income from a pattern of racketeering activity: (1) to acquire an interest in, establish or operate an enterprise involved in interstate commerce; (2) to acquire or maintain an interest in such enterprise through a pattern of racketeering activity; (3) to conduct or participate in the conducting of such enterprise through racketeering activity; and (4) to conspire to do any of the foregoing acts. (Simpson Elec. Corp. v Leucadia, Inc., 72 NY2d 450 [1988].) The RICO statutes provide a civil cause of action for those injured by such prohibited activity. Plaintiff claims a civil right to recovery under RICO.
The elements of civil RICO are: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. (18 USC §§ 1961, 1962, 1964; Podraza v Carriero, 212 AD2d 331 [4th Dept 1995].) Under RICO, the person held liable and the enterprise must be different entities. (Yellow Bus Lines, Inc. v Drivers, Chauffeurs & Helpers Local Union, 883 F2d 132 [1989].) The definition of racketeering includes any one of a number of predicate offenses, including wire and mail fraud. While there need not have been a successful criminal prosecution of such offenses, they must be factually supportable in the civil action. In order to establish a “pattern” there must be at least two racketeering activities within a 10-year period. (Simpson Elec. Corp. v Leucadia, Inc., supra; Podraza v Carriero, supra.)
Defendant moves to dismiss this cause of action, claiming that RICO has no application to the facts alleged. Plaintiff raises nothing in opposition to dismissal of the RICO claim.
*1008 There is no basis for a RICO claim under the facts of this case, even when giving plaintiff the most favorable interpretation of the facts. No enterprise is identified. Nor is any racketeering activity shown, let alone a pattern, as required to establish the claim.
The motion to dismiss the fourth cause of action is, therefore, granted.
E. Infringement/False Designation of Origin and Unfair Competition
It is undisputed that plaintiff has created a Web site and it copyrighted and registered a domain name of www.pennwarranty.com. It is also undisputed that defendant has created a Web site under the name of www.pennwarrantylitigation.com. Plaintiff’s claims for infringement, etc., are derived from the Lanham Act (15 USC § 1125) which makes misleading statements using a registered trade name subject to recovery of damages in a civil action.
Under the Lanham Act, a cyber-squatter is potentially liable to a trademark owner if: (1) there is a bad faith intent to profit from the mark, and (2) the domain name used is identical or confusingly similar to a distinctive or familiar trademark or legally protected trademark. Profit includes the commercial use of the trademark. Mere use of another’s name on the Internet, however, is not per se commercial use. (School of Visual Arts v Kuprewicz, 3 Misc 3d 278 [Sup Ct, NY County 2003].) It does not refer to a consumer’s desire to pursue an agenda to undermine the trademark holder’s business. (Bosley Med. Inst., Inc. v Kremer, 403 F3d 672 [9th Cir 2005].) Where a domain name and site is used to inform consumers about the maker’s experience with a company and there is no misleading information about the source of the site, no private right of action exists. (Lucas Nursery & Landscaping, Inc. v Grosse, 359 F3d 806 [6th Cir 2004].)
What is fatal to the cause of action at bar is that defendant’s Web site is not being used for any commercial purpose. The Web site is not selling competing products or any goods whatsoever. The Lanham Act cannot be used as a pretext to stifle criticism of goods or services by someone, such as a consumer advocate, who is not engaged in marketing or promoting a competitive product or service. (Tzougrakis v Cyveillance, Inc., 145 F Supp 2d 325 [SD NY 2001].)
In addition, the names of the Web sites are not confusingly similar. The two Web site names (www.pennwarranty.com and *1009 www.pennwarrantylitigation.com) are not identical. While defendant’s Web site name contains the words “penn” and “warranty,” the use of the additional word “litigation” in itself suggests that the site contains information about a court proceeding where Penn Warranty is pitted against someone or something else. The use of the word “litigation” would hardly serve as a “come on” or a “promotion” of Penn Warranty and/or its products.
Even, however, were there the slightest confusion about whether someone initially finding defendant’s Web site would think that he or she had actually reached plaintiffs own Web site, that mistaken belief would be dispelled immediately. Defendant’s Web site clearly and unmistakably indicates an unfavorable view of plaintiff and its business practices.
Summary judgment dismissing the fifth cause of action is, therefore, granted.
F. Permanent Injunction
The permanent injunction requested in this case is against the future making of defamatory statements by defendant. This cause of action is entirely dependant upon plaintiff establishing, at a minimum, its cause of action for defamation in the first place. (See Rombom v Weberman, 2002 NY Slip Op 50245 [U] [Sup Ct, Kings County 2002]; Trojan Elec. & Mach. Co. v Heusinger, 162 AD2d 859 [3d Dept 1990].) Since the court has dismissed the underlying cause of action for libel, there is similarly, and for the same reasoning, no basis to enjoin the making of such challenged statements in the future.
The court grants defendant’s motion for summary judgment dismissing the sixth cause of action and denies plaintiffs motion seeking summary judgment on the sixth cause of action.
Conclusion
In accordance herewith the court grants defendant’s motion for summary judgment dismissing the complaint and denies defendant’s motion for summary judgment on the third and sixth causes of action. It is hereby ordered that the complaint is hereby dismissed in its entirety, and it is further ordered that plaintiffs cross motion seeking summary judgment on the third and sixth causes of action is denied.
Any requested relief not expressly granted herein is denied.

 There is some concern that the doctrine of per se defamation may not withstand First Amendment constitutional scrutiny. (See Liberman v Gelstein, 80 NY2d 429, 435 n 1 [1992], supra.) Since this argument has not been raised at bar, the court does not reach it.