**Marvin SANDLER and Independent Living Aids, Inc., Plaintiffs,**

v.

**Oliver SIMOES, Assistech, Inc., Christopher Gray, and the American Council of the Blind, Defendant.**

**No. 07cv1738 (ADS)(ETB).**

United States District Court, E.D. New York.

March 27, 2009.

The Dweck Law Firm, LLP, by Jack S. Dweck, Esq., of Counsel, New York, NY, for Plaintiffs.

Morrison Mahoney LLP, by Kevin A. Hickman, Esq., of Counsel, Litchfield Cavo LLP, by Daniel T. Hughes, Esq., of Counsel, New York, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

## I. BACKGROUND

On April 27, 2007, the plaintiffs Marvin Sandler ("Sandler") and Independent Living Aids, Inc. ("ILA") filed this action against Oliver Simoes ("Simoes"), Assistech, Inc. ("Assistech"), Christopher Gray ("Gray"), and The American Council of the Blind ("ACB"), as well as Elliot Zaretsky ("Zaretsky"), Larry "Doe", and Maxi–Aids, Inc. ("Maxi–Aids"). In their complaint, the plaintiffs described ILA as "the oldest privately-held company in the business of providing products, on a national and international basis, for blind and visually impaired people...." (Complaint at ¶ 33). The plaintiffs listed the following causes of action: (1) libel; (2) tortious interference and trade libel; and (3) defamation and interference with economic advantage and opportunities. The plaintiffs' claims stem from the publication of an article in the ACB newsletter *The Braille Forum,* which the plaintiffs allege falsely disparaged their reputation for honesty, fair dealing, and excellent customer service. The following facts are derived from the plaintiffs' complaint and are taken as true for the purposes of this motion.

The defendant Simoes is an officer, director and substantial shareholder of Assistech, a company engaged in the sale of disability assistance devices. The defendant Gray is the President of the American Council for the Blind, the entity that publishes *The Braille Forum.* Zaretsky, is an officer, director, and substantial shareholder of Maxi–Aids, a direct competitor of ILA.

The plaintiffs contend that following an unsatisfactory business transaction involving the purchase of two allegedly defective "talking watches" from ILA by a customer of Assistech, the defendant Simoes filed complaints against ILA with the Consumer Protection Board of the State of New York, the Better Business Bureau, and the Federal Trade Commission and threatened to "place posts in strategic consumer protection website warning against ILA's unethical business practices...." (Complaint at ¶ 20).

The plaintiff further alleges that the April 2007 edition of *The Braille Forum* contained a lead article of about approximately 5 pages in length, authored by defendant Gray and entitled "President's Message: Fighting for Assistive Technology." The article refers to a "substantiated claim" from a February 27, 2007 press release by Assistech and concludes "How can one believe, assuming the majority of the details are true in this published report, that Independent Living Aids is working from an ethical position?" In addition, the article states that "it is my belief and suggestion that ACB's reaction can and should be to print substantiated

facts in such matters." (Complaint at ¶ 22).

The plaintiffs also contend that Maxi–Aids, a direct competitor of ILA, republished the *Braille Forum* article by sending unsolicited faxes containing the article to customers with a cover sheet on Maxi–Aids stationary, stating "FYI." (Complaint at 23). However, on June 8, 2007 the plaintiffs signed a stipulation of discontinuance against Zaretsky, Maxi–Aids, and Larry "Doe," which was accepted for filing in a revised form on May 3, 2008.

In the meantime, on or about May 25, 2007, the plaintiffs filed a summons and complaint in the Supreme Court of the State of New York, New York County, against Zaretsky, Larry "Doe," and Maxi–Aids the ("State Court Action"). The complaint filed in the state court action is substantively identical to the complaint filed in this action, with the exception that the section identifying the parties is limited to the three defendants in the State Court Action with a different statement of jurisdiction.

Following a motion to dismiss by the defendants in the State Court Action, on December 26, 2007, the Honorable Leland DeGrasse granted the motion and dismissed the complaint against Zaretsky, Larry "Doe," and Maxi–Aids. Judge DeGrasse explained that:

> Defendants, Elliot Zaretsky, Larry DiBlasi s/h/a Larry "Doe" and Maxi–Aids, Inc. move for an order dismissing the complaint pursuant to CPLR 3211(a)(7). Plaintiffs' causes of action, sounding in libel, trade libel and tortious interference with economic advantages, stem from the alleged republication of an article written by nonparty Christopher Gray which appeared in the April 2007 edition of The Braille Forum, a publication of nonparty the American Council of the Blind. Gray's article purportedly concerns a claim made by a

disgruntled customer of plaintiff Independent Living Aids, Inc. In the article, Gray describes the claim as "substantiated" and rhetorically asks "How can one believe, *assuming the majority of the details are true in this published report,* that Independent Living Aids is working from an ethical position?" [emphasis added]

An expression of pure opinion is not actionable (*Steinhilber v. Alphonse,* 68 N.Y.2d 283, 289 [508 N.Y.S.2d 901, 501 N.E.2d 550] [1986] ). The factors which are considered in differentiating between expressions of fact and opinion are:

> (1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might "signal to readers or listeners that what is being read or heard is likely to be opinion, not fact" (*id.* at 292 [508 N.Y.S.2d 901, 501 N.E.2d 550] ).

Utilizing this analysis, the court concludes that the subject statements are non-actionable opinion particularly in light of the emphasized portion of the quoted language. Moreover, plaintiffs' answering affidavit is hearsay to the extent that it speaks of publication of the article to one Chris Gabbard. The claim is not based upon personal knowledge (*cf. Jones v. First Fed. Sav. and Loan Asso.,* 101 A.D.2d 1005 [476 N.Y.S.2d 688] [1984] ). Plaintiffs' claims of trade

libel and interference with economic advantage are also deficient. A party making such claims must allege that: "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship" (*Carvel Corp. v. Noonan*, 350 F.3d 6, 17 [2003] ).

Such allegations have not been made. For the foregoing reasons, the motion is granted and the complaint dismissed. The Clerk shall enter judgment accordingly.

*Decision and Order*, December 26, 2007, Index No. 107469/2007.

On March 27, 2008, Simoes and Assistech filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that the state court's determination has a binding effect in this action and the complaint is accordingly barred under the doctrine of collateral estoppel. On November 24, 2008, Gray and ACB filed an identical motion. In opposition, the plaintiffs contend that, while the causes of action are the same in both complaints, the conduct of each group of defendant is different and, thus, the state court's determination has no determinative effect concerning the conduct of the defendants in this case.

## II. DISCUSSION

### A. Dismissal for Failure to State a Claim

In considering a 12(b)(6) motion to dismiss, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir.2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

In this regard, the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir.2005); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999).

Further, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). According to the Second Circuit, in *Twombly*, "the Supreme Court held that a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007). Indeed, the *Twombly* Court noted that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965 (internal citations omitted).

■ When a claim of collateral estoppel is raised as an affirmative defense, " 'and it is clear from the face of the complaint ... that the plaintiff's claims are barred as a matter of law,' dismissal under Fed. R.Civ.P. 12(b)(6) is appropriate." *Austin v. Downs, Rachlin & Martin*, 270 Fed. Appx. 52, 53 (2d Cir.2008) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86–87 (2d Cir.2000)).

### B. Collateral Estoppel

■ The doctrine of collateral estoppel, or issue preclusion, provides that "an issue of law or fact actually litigated and decided by a court of competent jurisdic-

tion in a prior action may not be relitigated in a subsequent suit between the same parties or their privies." *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir.2008) (citations, internal quotations, and emphasis omitted). Further, "[u]nder non-mutual collateral estoppel, if a litigant has had an opportunity to fully and fairly litigate an issue and lost, then third parties unrelated to the original action can bar the litigant from relitigating that same issue in a subsequent suit." *Austin*, 270 Fed.Appx. at 54; *Deng v. Aramark Educ. Group, Inc.*, No. 04CV4536, 2006 WL 752826, at *6 (E.D.N.Y. March 23, 2006) ("Under non-mutual collateral estoppel, third parties unrelated to the original action can bar the litigant from relitigating the same issue in a subsequent suit."). "The term 'non-mutual' indicates that a new defendant in the plaintiff's second lawsuit may defensively invoke collateral estoppel regarding issues of law or fact decided in the plaintiff's first action." *Jasper v. Sony Music Entm't, Inc.*, 378 F.Supp.2d 334, 343 (S.D.N.Y.2005) ("By binding the plaintiff to earlier judicial decisions in which he was a party, defensive collateral estoppel precludes a plaintiff from getting a second bite at the apple merely by choosing a new adversary.").

■ Where there is parallel litigation in state and federal courts, the United States Supreme Court has repeatedly held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) (noting, however, that "[c]omity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation") (quoting *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)). However, once the state court action has been adjudicated, disposition of the federal action may be governed by preclusion law. *See id.* at 293, 125 S.Ct. 1517. In parallel litigation, therefore, "a federal court may be bound to recognize the claim—and issue—preclusive effects of the state court judgment...." *Id.*; *see also Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986) (noting that under 28 U.S.C. § 1738, a federal court is required "to give the same preclusive effect to a state-court judgment as another court of that State would give.").

■ Where, as here, the first judgment is rendered by a state court, the state rules regarding estoppel will apply. Pursuant to 28 U.S.C. § 1652 "[t]he laws of the several states ... shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." In addition, "[u]nder the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996); *see also Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 118 (2d Cir.2005). The Second Circuit has clearly established that federal law applies in determining the preclusive effect of a federal judgment, while New York law applies in determining the preclusive effect of a New York State court judgment. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir.2002) (internal citations omitted). Although application of either would frequently lead to the same result, "these two bodies of law do appear to diverge in some particulars." *Industrial Risk Insurers v. Port Authority of N.Y. and N.J.*, 493 F.3d 283, 288 (2d Cir.2007).

In *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969), the New York Court of Appeals stated that the doctrine of collateral estoppel may be invoked where there is an

"identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and the party against whom preclusion is asserted had a "full and fair opportunity to contest the decision now said to be controlling." *Id.* at 71, 298 N.Y.S.2d at 960, 246 N.E.2d 725.

Accordingly, collateral estoppel may be invoked to preclude a party from raising an issue (1) identical to an issue already decided; (2) in a previous proceeding in which that party had a full and fair opportunity to litigate; and (3) that is decisive [in] the *present* action. *See Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir.2003) (emphasis added) (explaining that the last factor marks the slight difference between state and federal collateral estoppel law). In addition, "[t]he party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues ... whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985) (citations omitted).

In determining whether a party had a full and fair opportunity to litigate the issue, the New York Court of Appeals has instructed that 'the various elements which make up the realities of litigation,' should be explored, including 'the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation.' *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 734 (2d Cir.2001) (quoting *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 72, 298 N.Y.S.2d 955, 961, 246 N.E.2d 725 (1969)). Further, an issue is

decisive of the present action "if it would prove or disprove, without more, an essential element of any of the claims set forth in the complaint." *Curry*, 316 F.3d at 332.

The plaintiffs argue that the issues involved in the present case were not litigated in the state because (1) the alleged conduct of the movants in the present case is different from the conduct alleged in the state court action; and (2) the defendants here were not present before the state court and were not privy to the arguments or claims in that court. Notwithstanding these contentions by the plaintiffs, the Court finds that they had a full and fair opportunity to litigate the issues before the state court. The state court's judgment references the plaintiffs' arguments in opposition to the defendants' motion. In addition, the plaintiffs are represented here by the same competent counsel as in the State Court Action. Further, the plaintiffs fail to raise any new evidence or differences in the applicable law governing the claims in the two actions that would make it unfair to hold the plaintiff to the state court's determination.

At the outset, the Court notes that this case is in the federal court by reason of diversity jurisdiction, and, accordingly, the same legal rules and principles governing the claims in the State Court Action apply with equal effect here.

### 1. As to the plaintiffs' libel claims

In order to prevail on a libel claim, a party must prove (1) a false and defamatory statement of fact; (2) of and concerning the plaintiff; (3) which is published to a third party and which (4) results in injury to plaintiff. *Foster v. Churchill*, 87 N.Y.2d 744, 751, 642 N.Y.S.2d 583, 665 N.E.2d 153 (1996) ("[Defamation] is defined as the making of a false statement which tends to expose the plaintiff to public contempt, ridicule,

aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." (internal quotations and citations omitted)); *Penn Warranty Corp. v. DiGiovanni*, 10 Misc.3d 998, 1002, 810 N.Y.S.2d 807 (Sup.Ct. New York County 2005). Statements that charge a person with a serious crime; tend to injure the plaintiff in its business, trade or profession; assert the plaintiff has some loathsome disease; or accuse a female plaintiff of being unchaste, are defamatory *per se*. *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992); *Penn Warranty*, 10 Misc.3d at 1002, 810 N.Y.S.2d 807. "When statements fall within one of these categories, the law presumes that damages will result, and they need not be alleged or proven." *Liberman*, 80 N.Y.2d at 435, 590 N.Y.S.2d 857, 605 N.E.2d 344.

New York's C.P.L.R. § 3016(a) requires that the particular words complained of be set forth in a complaint alleging libel or slander. In this regard, the plaintiffs are "bound by the alleged defamatory words contained in the four corners of the complaint." *Penn Warranty*, 10 Misc.3d at 1002, 810 N.Y.S.2d 807; *see also Lore v. City of Syracuse*, 583 F.Supp.2d 345, 383 (N.D.N.Y.2008) (applying the New York rule in a federal diversity action).

The plaintiffs contend that the State Supreme Court determined only that the republication by Zaretsky and Maxi–Aids of the *Braille Forum* article was not actionable as defamation. The plaintiffs further argue that there is no identity of issues because the defendants in this action are charged with having engaged in different conduct giving rise to the plaintiffs' claims based upon a "hate campaign." The Court disagrees with respect to the conduct of Gray and ACB.

First, the court notes that the allegations found in the state and federal com-

plaints are substantively identical and raise the same conduct. More importantly, the state court did not limit its ruling to the conduct of Zaretsky, Larry "Doe," and Maxi–Aids, but instead definitely determined that the words found in the *Braille Forum* article were statements of opinion. As Gray was the author of those words, and ACB the original publisher, the state court's decision that the article was non-actionable opinion applies to the plaintiffs' libel claims against Gray and ACB.

However, the plaintiffs' allegations with respect to Simoes and Assistech are somewhat different than those against Gray and ACB or Zaretsky, Larry "Doe" and Maxi–Aids. In support of their libel claims, the plaintiffs raise both the *Braille Forum* article, as well as a press-release from Assistech and complaints filed by Simoes with the Consumer Protection Board of the State of New York, the Better Business Bureau, and the Federal Trade Commission. The issue of these statements was not before the state court, and not raised by its decision. Accordingly, the plaintiffs' libel claims against Simoes and Assistech are not foreclosed by the state court's decision and must be considered separately here.

"Whether a particular statement constitutes an opinion or an objective fact is a question of law." *Mann v. Abel*, 10 N.Y.3d 271, 276, 885 N.E.2d 884, 856 N.Y.S.2d 31 (2008). The New York Court of Appeals has stated that the factors to be considered in determining whether a statement is fact or opinion are: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . read-

ers or listeners that what is being read or heard is likely to be opinion, not fact." *Brian v. Richardson*, 87 N.Y.2d 46, 51, 637 N.Y.S.2d 347, 660 N.E.2d 1126 (1995) (internal quotations and citations omitted); *see also Flamm v. American Assoc. of University Women*, 201 F.3d 144, 153 (2d Cir.2000) (noting the New York standard).

Importantly, "courts must consider the content of the communication as a whole, as well as its tone and apparent purpose and in particular should look to the overall context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff." *Mann*, 10 N.Y.3d at 276, 885 N.E.2d 884, 856 N.Y.S.2d 31 (internal quotations and citations omitted).

In *Penn Warranty*, the court found that defendant's statements posted on a self-created web site, including statements that the plaintiff was a "blatantly dishonest company;" was a "crooked company;" and had "been ripping off its contract holders for quite a while," when viewed in full context of their publication were subjective expressions of personal opinion by a disgruntled customer based upon his personal dealings with the plaintiff. *Penn Warranty*, 10 Misc.3d at 1005, 810 N.Y.S.2d 807; *see also Polish American Immigration Relief Comm., Inc. v. Relax*, 189 A.D.2d 370, 374, 596 N.Y.S.2d 756 (1st Dep't 1993) (finding that publication of letters from disgruntled immigrants about Polish immigrant aid corporation, including comments that the organization was a "madhouse" comprised of "thieves" and "false do-gooders" were non-actionable expressions of opinion that would not lead to a belief that actual criminality was afoot).

■■■■ The only statements attributed to Simoes and/or Assistech and set forth in the complaint are those allegedly filed with the Consumer Protection Board of the State of New York, the Better Business Bureau, and the Federal Trade Commission, in which Simoes states that he "will place posts in strategic consumer protection websites warning against ILA's unethical business practices. ILA's termination letter was sarcastic, demeaning and arrogant. If you are the type of customer who likes to be treated with decency, stay away from this company." (Complaint at ¶ 20). The plaintiffs do not set forth the language of the February 27, 2007 press release from Assistech and did not attach it to the complaint. As in *Penn Warranty*, Simoes' statements to the three consumer protection agencies are clearly the opinion of a dissatisfied customer based upon personal dealings with the plaintiff. *Penn Warranty*, 10 Misc.3d at 1005, 810 N.Y.S.2d 807 ("[I]n the context of statements pertaining to issues of consumer advocacy, courts have been loathe to stifle someone's criticism of goods or services."). Accordingly, the plaintiffs' libel claims against Simoes and Assistech must also be dismissed.

### 2. As to the plaintiffs' claims for trade libel

■■■■ "Trade libel is the knowing publication of false and derogatory material regarding one's business, that is calculated to prevent others from doing business with the defamed party or otherwise interferes with one's business relationships." *Penn Warranty*, 10 Misc.3d at 1003, 810 N.Y.S.2d 807; *see also Waste Distillation Technology, Inc. v. Blasland & Bouck Engineers, P.C.*, 136 A.D.2d 633, 633, 523 N.Y.S.2d 875 (2d Dep't 1988). A party alleging trade libel must establish that the communication was a substantial factor in inducing others not to conduct business with it and, unlike libel *per se*, must adduce proof of special damages in the form of lost dealings. *Waste Distillation*, 136 A.D.2d at 634, 523 N.Y.S.2d 875.

"In pleading special damages, actual losses must be identified and causally related to the alleged tortious act." *Waste Distillation,* 136 A.D.2d at 633, 523 N.Y.S.2d 875; *Matherson v. Marchello,* 100 A.D.2d 233, 234, 473 N.Y.S.2d 998, 1000–01 (2d Dep't 1984) (explaining that special damages "must be fully and accurately identified with sufficient particularity to identify actual losses" and that "[w]hen loss of business is claimed, the persons who ceased to be customers must be named and the losses itemized") (internal quotations and citations omitted). In the instant case, the plaintiffs fail to identify any losses incurred as a result of the defendants' statements.

■ Moreover, as with other defamation claims, a claim of trade libel may be defeated by a showing that the subject statements, when read in context, would be perceived by a reasonable person to be nothing more than personal opinion. *Penn Warranty,* 10 Misc.3d at 1003, 810 N.Y.S.2d 807. In this regard, the finding by Justice DeGrasse that the article published in the *Braille Forum* would be interpreted by a reasonable reader as a matter of opinion of the author also is applicable to the plaintiffs' trade libel claims as against Gray and ACB. Further, as discussed above, the statements attributed to Simoes and Assistech are similarly expressions of opinion by dissatisfied consumers, and as such, are not actionable. Accordingly, the plaintiffs' claims for trade libel must be dismissed in their entirety.

*3. As to the plaintiffs' claim of tortious interference with economic advantage*

With respect to the plaintiffs' interference with economic advantage claims, the state court found that the plaintiffs failed to allege that Zaretsky, Larry "Doe," and Maxi–Aids knew of a business relationship between the plaintiffs and a third party and acted out of malice to cause injury to that relationship. The state court's decision examined only the allegations of improper conduct raised against the defendants in that action. The claims against the defendants here involve a different set of alleged actions and, therefore, are not precluded by Justice DeGrasse's decision. *Cf. Ronquillo v. Lehman Bros., Inc.,* No. O6CV1219, 2008 WL 217082, at *4 n. 1 (S.D.N.Y. Jan. 18, 2008) (granting a stranger to the first action the benefit of non-mutual defensive collateral estoppel where identical claims in an early state court action and the federal action arose from the exact same operative facts).

■ However, upon reviewing the plaintiffs' allegations against the defendants in this action, the Court finds the complaint here similarly insufficient. In order to state a claim for tortious interference with economic advantage, a plaintiff must allege "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v. Noonan,* 350 F.3d 6, 17 (2d Cir.2003); *see also Kirch v. Liberty Media Corp.,* 449 F.3d 388, 400 (2d Cir.2006).

■ The plaintiffs fail to identify a specific business relationship that the defendants were aware of and with which they knowingly interfered. *See Business Networks of New York, Inc. v. Complete Network Solutions Inc.,* 265 A.D.2d 194, 195, 696 N.Y.S.2d 433 (1st Dep't 1999) ("[T]he cause of action for tortious interference with prospective business relations should have been dismissed for failure to allege any specific prospective relationship with which defendants interfered."); *Vigoda v. DCA Prods. Plus Inc.,* 293 A.D.2d 265, 266–267, 741 N.Y.S.2d 20 (1st Dep't 2002)

**304**

(same). In addition, the plaintiffs fail to allege an injury to any business relationship as a result of the acts of the defendants. Therefore, the plaintiffs' claims against Gray, ACB, Simoes, and Assistech for interference with economic advantage are dismissed.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the defendants' motions to dismiss the plaintiffs' libel claims are granted; and it is further

**ORDERED,** that the defendants' motions to dismiss the plaintiffs' trade libel claims are granted; and it is further

**ORDERED,** that the defendants' motions to dismiss the plaintiffs' tortious interference with economic advantages claims are granted; and it is further

**ORDERED,** that the complaint is dismissed in its entirety and the Clerk of the Court is directed to close this case.

**SO ORDERED.**